**LAW OFFICES OF ALLA V. VOROBETS**
Alla V. Vorobets, SBN 258586
Celia R. Bernal, SBN 150063
4790 Dewey Drive, Suite J
Fair Oaks, CA 95628
Tel:  (916) 966-8529
Fax:  (916) 966-8527

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GN TRADE, INC., a California Corporation;
VLADIMIR DEMIN; VLADIMIR
SHEVCHENKO;

               Plaintiffs,

    vs.

ANDREAS SIEMENS; SIEMENS
INTERNATIONAL TRADING
CORPORATION aka SIEMENS IT CORP.;
BRIGHTON BAZAAR; and DOES 1-25

            Defendants.

_____

Case No.:

COMPLAINT FOR:

1.  **Infringement of Federally-Registered Trademarks (Lanham Act §32)**
2.  **Trademark Infringement – False Designation of Origin  (Lanham Act)**
3.  **Breach of Written Contract**
4.  **Breach of Covenant of Good Faith and Fair Dealing**
5.  **Rescission of Contract**
6.  **Breach of Written Contract (pled in the alternative)**
7.  **Breach of Covenant of Good Faith and Fair Dealing (pled in the alternative)**
8.  **Interference with Contractual Relations**
9.  **Intentional Interference With Contract**
10. **Negligent Interference With Business Relationships**
11. **Intentional Interference With Prospective Economic Advantage**
12. **Negligent Interference with Prospective Economic Advantage**
13. **Common Law Unfair Competition**
14. **Unfair Competition In Violation Of Cal. Bus. & Prof. Code §17200 Et. Seq.**
15. **Violation Of California's Anti-Dilution Act (Cal. Bus. & Prof. Code §14330)**
16. **Trade Libel**
17. **Defamation**
18. **Conversion**
19. **Fraud**
20. **Specific Performance**

**Demand for Injunctive Relief**
**Demand For Jury Trial**

COMPLAINT - 1

Plaintiffs, GN TRADE, INC., VLADIMIR DEMIN and VLADIMIR SHEVCHENKO, by and through their counsel, for their Complaint against Defendants ANDREAS SIEMENS, SIEMENS INTERNATIONAL TRADING CORPORATION aka SIEMENS IT CORP., BRIGHTON BAZAAR and DOES 1-25, plead as follows:

## JURISDICTION

1.     This court has subject matter jurisdiction based on federal question as this action arises under the Lanham Act of July 5, 1946, 60 Stat. 427, USC, Title 15, §§1051-1127. Jurisdiction over the subject matter herein is vested in this Court pursuant to 15 U.S.C. §1231 and 28 U.S.C. §§1331, 1338(a) and 1338(b).  Supplemental jurisdiction over the state law claims is also appropriate under principles of supplemental jurisdiction, 28 U.S.C. §1367.  These claims all arise out of the same controversy and sequence of events.  Jurisdiction of this Court for the pendent state claims is authorized by Federal Rule of Civil Procedure 18(a).

2.     This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California and the Eastern District and thus have sufficient contacts, have purposefully availed themselves of the privileges and benefits of conducting activities within this State and District and/or all Defendants' business contacts within this State and District are continuous and systematic (including acts performed outside this State and District that have an effect within this State and District).

## VENUE

3.     Venue is proper in this judicial district under 28 U.S.C. §1391(b).

## INTRA-DISTRICT ASSIGNMENT

4.     Intra-district assignment to the Sacramento Division is appropriate as a substantial part of the events which give rise to the claims as alleged herein occurred in the County of Sacramento by virtue of Defendants' unlawful activities in this county.

## PARTIES

5.     Plaintiff, GN TRADE, INC. is, and at all relevant times was, a California corporation with its principal place of business in Sacramento County, Sacramento, California.

6.     Plaintiff, VLADIMIR DEMIN is, and at all relevant times was, an individual residing in Sacramento County, California and principal of GN TRADE, INC.

7.     Plaintiff, VLADIMIR SHEVCHENKO is, and at all relevant times was, an individual residing in Placer County, California and principal of GN TRADE, INC.

8.     Plaintiffs are informed and believe, and thereon allege, that Defendant, ANDREAS SIEMENS, is an individual doing business as SIEMENS INTERNATIONAL TRADING CORPORATION aka SIEMENS IT CORP. with its principal place of business in Sacramento County, California.

9.     Plaintiffs are informed and believe, and thereon allege, that Defendant, SIEMENS INTERNATIONAL TRADING CORPORATION aka SIEMENS IT CORP., is a California Corporation with its principal place of business in Sacramento County, California.

10.    Plaintiffs are informed and believe, and thereon allege, that Defendant BRIGHTON BAZAAR is a New York corporation, regularly doing business in California, purposefully availing itself of the privileges and benefits of conducting activities within this State and District and/or have continuous and systematic business contacts within the this State and District (including acts performed outside this State and District that have an effect within this State and District.)

11.    All Doe Defendants are certain unidentified individuals or entities.  Plaintiffs do not know the true names or capacities of the Doe Defendants and therefore sue these Defendants by such fictitious names. Upon discovering the true names and capacities of the Doe Defendants, and each of them, Plaintiffs intend to amend this Complaint to specifically name the Doe Defendants and to add or remove allegations as needed.

12.    On information and belief, the Doe Defendants are, and at all relevant times were, residents of California, doing business in California or otherwise engaging in activity creating sufficient contacts with the State of California to give rise to personal jurisdiction.

13.    On information and belief, each of the Doe Defendants is responsible in some manner for the occurrences alleged herein, and Plaintiffs' damages as herein alleged were caused by such Doe Defendants.  On information and belief, each of the Defendants named herein,

including the Doe Defendants, was an agent, partner, representative, employee, co-proprietor, co-venturer, owner, subsidiary, assignee or assignor of each of the other Defendants, and was with respect to all matters referred to herein acting with the purpose and scope of such agency, partnership, representation, employment, ownership, venture, corporate relationship or assignment.  On information and belief, each of the Defendants has ratified and/or approved each of the acts and omissions of each of the other Defendants.

## GENERAL ALLEGATIONS

## INTRODUCTION

14.    This case is more than a simple accidental trademark infringement.  Defendants have taken Plaintiffs' product and, using Plaintiff's federally registered trademark, sold it as their own, *to Plaintiffs' customers, at a lower price.*  Defendants have accomplished their ends by means of defamation, conversion, breach of contract and coercion.  Moreover, Defendants have continued in this piracy despite Plaintiffs' multiple demands they cease and desist such activities.

15.    As a result of Defendants' willful actions, Plaintiffs have suffered damage to their business including, but not limited to, lost profits, lost goodwill, humiliation, damage to prospective economic advantage and interference with contractual relations.

16.    Defendants are now preventing Plaintiffs from obtaining any product at all, and are attempting to completely take over the market Plaintiffs have spent over seven years building up.

17.    Nothing short of an immediate injunction will prevent further damage to Plaintiffs.

## THE PLAYERS

18.    Plaintiffs are VLADIMIR DEMIN ("DEMIN"), VLADIMIR SHEVCHENKO ("SHEVCHENKO") and GN TRADE, INC. ("GN TRADE" or "PRODUCER") (collectively Plaintiffs).

19.    Thomas Blohm is the owner of Back Shop Tiefkühl[1] GmbH  ("Back Shop" or "Producer") in Hamburg Germany.  Back Shop produces the bakery products distributed by Plaintiffs.

---

[1]  The English translation of the German word "tiefkühl" is "frozen".

20.    DEMIN and SHEVCHENKO are the owners of GN TRADE.  GN TRADE is entitled to the sole distribution rights, in all of North America, of Back Shop products. (SIEMENS INTERNATIONAL TRADING CORPORATION retained the right to sell directly to only two retail stores in New York, one of whom is BRIGHTON BAZAAR, a retail bakery in New York.)

21.    The terms of the sole distributorship recognize that GN TRADE has the right to sell Back Shop products under the Bäcker[2] Bäck brand.  GN TRADE is the owner of the federally registered trademark Bäcker Bäck.  A copy of the Certificate of Registration is attached as **Exhibit A**.

22.    Defendants are ANDREAS SIEMENS ("SIEMENS"), SIEMENS INTERNATIONAL TRADING CORPORATION, aka SIEMENS IT CORP., ("SIEMENS IT" or "SUPPLIER") (collectively referred to as the "SIEMENS DEFENDANTS"), and BRIGHTON BAZAAR ("BRIGHTON") (collectively Defendants).

23.    SIEMENS is the owner of SIEMENS IT who, Plaintiffs are informed and believe and on this basis allege, has the FDA registration necessary for shipping and importing the Back Shop product from Germany into the United States.

24.    The SIEMENS DEFENDANTS ship and import Back Shop product into the United States, and are supposed to provide the produce solely to GN TRADE for distribution.

## THE BEGINNING

25.    In or about 2004, SIEMENS approached DEMIN in his store, soliciting DEMIN to work with him, by importing things from Germany and selling them in the United States. SIEMENS convinced DEMIN to join him in a venture to import product from Europe.  They opened GN Trade for this purpose. DEMIN later determined that good German bread would be a profitable item to import.  As a result, SIEMENS and DEMIN went to Germany and had a meeting with Back Shop and Thomas Blohm to propose importing the Back Shop product.

---

[2] The English translation for Bäcker is baker, while Bäck is a stylization of the English word "back".  The federal trademark brand Bäcker Bäck, then loosely translated means "the Baker is Back".

26.    Beginning in or about 2005, GN Trade was to the point in its development that there was a need to invest funds into product and storage. At that point, SIEMENS told DEMIN that because he (SIEMENS) needs to spend his time in Germany and will not be present to exercise control over events in the U.S., it would be a better use of his time to pack the containers in Germany for shipping to GN Trade in the U.S.

27.    SIEMENS represented that 10% of the product cost would be more than enough compensation for him. SIEMENS confirmed, in writing, that he was stepping out of GN Trade.

28.    SIEMENS did not invest any funds into GN Trade and turned complete ownership of GN Trade over to DEMIN.

29.    Thereafter, DEMIN sold half of the business to SHEVCHENKO.  Together, DEMIN and SHEVCHENKO restructured GN Trade to GN TRADE, INC. and began expanding their market and creating a reputation and goodwill in that market.

30.    In or about 2006, SIEMENS, falsely representing that GN TRADE[3] and SIEMENS IT worked together and were "one group[4]", induced Thomas Blohm to sign a five-year exclusive distribution agreement ("the German agreement") with SIEMENS IT.  A copy of that agreement, accompanied by an English translation is attached as **Exhibit B**.

31.    Thereafter, the SIEMENS DEFENDANTS entered into contracts with GN TRADE for distribution in the United States.  As discussed in more detail below, despite written contracts, by dint of coercion, conversion, trademark infringement and other unfair business practices, Defendants have deprived Plaintiffs of their distributorship rights and materially damaged GN TRADE's business.

///

///

---

[3] Plaintiffs are informed, and on that basis allege, that the SIEMENS DEFENDANTS used GN TRADE's strong marketing reputation that SHEVCHENKO and DEMIN had already begun building to convince Blohm that the SIEMENS DEFENDANTS would be able to sell his product in the United States.

[4] In fact, Thomas Blohm did not refer to SIEMENS IT and GN TRADE as separate companies, but referred to them as "A Group".

**THE MECHANICS**

32.    The mechanics of how GN TRADE obtained Back Shop product for distribution is critical to understanding how Defendants have been able to coerce Plaintiffs, interfere with their business and, ultimately, deprive them of all Back Shop product.

33.    The product is fresh-baked bakery products, deep frozen to maintain quality and taste, and which GN TRADE has, through years of consistent, effective marketing made very popular in the market they have developed, especially within the Russian community.  The dough is made fresh in Germany by Back Shop, baked into loaves and deep frozen.  Back Shop also packages the loaves into carton cases, applying GN TRADE's label (with the trademark logo provided by GN TRADE for that purpose) to the sealed carton cases.

34.    In accordance with the parties' agreement, GN TRADE also receives carton cases of product with the Back Shop label which they, likewise, distribute, under the contractual agreement.

35.    The SIEMENS DEFENDANTS then load the packaged bread into shipping containers and arrange for it to be taken to port in Hamburg.  From there, the SIEMENS DEFENDANTS are then supposed to ship the containers to GN TRADE's warehouses[5] in the United States.

36.    The SIEMENS DEFENDANTS, therefore, have complete control over the product from the time it leaves Back Shop until GN TRADE gets it from their warehouse.

**CONTRACT #1**

37.     In or about January 2007, GN TRADE entered into a "Contract to Be a Sole Distributor" with SIEMENS IT ("Contract #1").  A copy of Contract #1, prepared by the SIEMENS DEFENDANTS, is attached as **Exhibit C**.  SIEMENS IT describes itself in Contract #1 as the Supplier and GN TRADE as the Distributor to "receive the sole distribution rights to the products offered by the supplier under the brand "Back Shop…" within the USA. (Contract #1 at ¶1.)

---

[5] GN Trade has warehouses in Oregon, Washington, California (Sacramento & LA), Chicago, Illinois, Georgia & New York.

38.   SIEMENS IT held for itself only the right to sell directly to two retail stores in New York: BRIGHTON BAZAAR and Cristlgis.  (*Id.*)

39.   Exclusive Distributorship

Other pertinent terms of Contract #1 are that "supplier will grant the distribution rights … only to the distributor, and will be selling products from "Back Shop" … only through distributor" (Contract #1 at ¶2(1).)  Further on, it is affirmed that "Supplier cannot work with any other distributor in the region."  (Contract #1 at ¶3(2).)

40.   Penalty for Violation of Exclusive Distributorship

The SIEMENS DEFENDANTS are also required to pay GN TRADE $5,000 for every violation of the exclusive distributorship provisions outlined in paragraph 2 of Contract #1.  (Contract #1 ¶5(1).)  Further, upon GN TRADE's request the SIEMENS DEFENDANTS are *required* to cease shipping to any third party who sells product in GN TRADE's contract region.  (Contract #1 ¶5(2).)

41.   Shipping Responsibilities

Contract #1 provides that the "Supplier [the SIEMENS DEFENDANTS] is solely responsible for the shipping" and will take responsibility for all claims.  Any claims not resolved within 180 days require the SIEMENS DEFENDANTS to pay back the full amount to GN TRADE."  (Contract #1 ¶4(6).)

42.   GN Trade's Obligation

The contract calls for GN TRADE to develop sales to the point of five containers per month, within six months.  (Contract #1 ¶3(1).)  GN TRADE met and exceeded this condition.

43.   Termination

The SIEMENS DEFENDANTS drafted Contract #1 to be non-terminable for a period of two years.  "The contract is valid until 12/31/2008 without the normal right for termination."  (Contract #1 ¶6(1).)  This served as both an inducement for GN TRADE to enter into the contract as well as a commitment GN TRADE would not be able to escape should things go awry.

44.    Thereafter, it was terminable only *at the end of the contract year* with two months' notice.

### BREACH OF CONTRACT #1

45.    In September 2008, during the non-termination period, the SIEMENS DEFENDANTS sent GN TRADE a letter purporting to terminate Contract #1 effective January 1, 2009.  This letter was a breach of Contract #1's provisions in that it occurred during the non-termination period and was over 12 months prior to the end of the 2009 contract year.

46.    In addition, the only reason the SIEMENS DEFENDANTS put forth for termination was that "the present state does not favor the terms of the contract."  In the letter, the SIEMENS DEFENDANTS demanded a new contract with "new contractual conditions".

47.    Every contract or agreement in California contains an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.  The SIEMENS DEFENDANTS' termination of Contract #1 for no reason other than because the SIEMENS DEFENDANTS found that the contract did not favor them, violates the covenant of good faith and fair dealing as more fully alleged below.

48.    In addition, Plaintiffs later learned that the SIEMENS DEFENDANTS were providing Back Shop product to multiple retail stores (not just the two indicated in the contract) and that at least one store, BRIGHTON BAZAAR, sold it, with the SIEMENS DEFENDANTS' approval and knowledge, to other stores.  Eventually, after sending the termination letter to GN TRADE (see paragraph 45, above), the SIEMENS DEFENDANTS began selling the product to these stores at a reduced price.  These activities were also occurring within GN TRADE's exclusive distribution region.

49.    Furthermore, the SIEMENS DEFENDANTS began diverting containers with Bäcker Bäck trademark product for their own use.  Rather than shipping the containers to GN TRADE's designated warehouse, the SIEMENS DEFENDANTS diverted containers to another location, not GN TRADE's warehouse.

///

50.   Each container held product valued at between $10,000 to $15,000, gross (or approximately $12,000 net profit per container.)

## CONTRACT #2

51.   On or about January 21, 2009, GN TRADE entered into a second "Contract to Be a Sole Distributor" with SIEMENS IT ("Contract #2").  A copy of Contract #2, prepared by the SIEMENS DEFENDANTS, is attached as **Exhibit D**.  The SIEMENS DEFENDANTS coerced Plaintiffs into signing Contract #2 by threatening to stop delivery of all Back Shop products to GN TRADE.

52.   The SIEMENS DEFENDANTS words to Plaintiffs were that, unless the new contract was executed, they "would sell to everyone and eliminate [GN TRADE's] exclusive distributorship"

## Material Changes in Contract #2

53.   Contract #2 materially changed Plaintiffs' position, to their detriment while simultaneously providing the SIEMENS DEFENDANTS with greater control and less risk.  The significant differences between Contract #1 and Contract #2 are as follows:

a.      GN TRADE is restricted to distributing four (4) types of bread as opposed to all Back Shop brand products.  (Contract #2 at ¶1.)

b.      GN TRADE's distribution area is reduced from North America to six (6) states (eight (8) states are held in "reserve").  (Contract #2 at ¶1.)

c.      The SIEMENS DEFENDANTS removed the guarantee of competitive prices and built in protection for themselves based on changes in the commodity market. (Contract #2 at ¶¶5, 6(b).)

d.      GN TRADE is now required to sell a minimum of forty-eight (48) containers per year, but must meet this requirement using only four (4) products in six (6) states. (Contract #2 at ¶¶3(1), (2).)

e.      GN TRADE is now prohibited from working directly with the SIEMENS DEFENDANTS' "stores, customers, buyers and distributors."  Ergo, the SIEMENS

DEFENDANTS are now a supplier *and* a distributor and it appears the SIEMENS
DEFENDANTS now have other distributors as well.

   f. GN TRADE is limited to expanding its market in the states with
"reservations" to those contacts supplied by the SIEMENS DEFENDANTS.  Even then, under
certain circumstances, the SIEMENS DEFENDANTS have reserved the right to deliver to and
contact these locations on their own or to provide the contact to another distributor.  (Contract #2
at ¶3(5).)

   g. GN TRADE's right to pay 50% of the invoice prior to shipping and 50%
upon arrival (with an increased commission of 15%) is removed.  (Contract #2 at ¶¶4(3)– (5).)

   h. GN TRADE must now pay 15% commission (rather than 12%) if it pays
for the product upon arrival at its warehouse (rather than when the SIEMENS DEFENDANTS
represents it has been shipped) and, in addition, must advise the SIEMENS DEFENDANTS of
any intention to choose this payment method at the time of submitting a purchase order.
(Contract #2 at ¶4(5).)

   i. Rather than a penalty of $5,000 for each violation of its obligations in ¶2
as stated in Contract #1, the SIEMENS DEFENDANTS have limited the penalty to only two of
the six (6) subsections in ¶2 of Contract #2.  Contract #2, therefore, eliminates the SIEMENS
DEFENDANTS' potential liability for (1) failing to forward to GN TRADE's requests the
SIEMENS DEFENDANTS receive directly and (2) making direct shipments to "stores,
customers, buyers and distributors that are working with [GN TRADE.]"

  j. Contract #2 *adds* a $5,000 penalty to GN TRADE for selling anything other than
the four (4) products named in the six (6) states designated.

  54. <u>Termination</u>

  The requirements for termination remained the same except that Contract #2 was non-
terminable until December 31, 2010. (Contract #2 at ¶6(1).).  Thereafter, it was terminable only
*at the end of the contract year* with two months' notice.

///

///

**BREACH OF CONTRACT #2**

55.    As with Contract #1, the SIEMENS DEFENDANTS breached Contract #2 with a premature termination.   In September 2010, ***during the non-termination period***, the SIEMENS DEFENDANTS sent GN TRADE a letter purporting to terminate Contract #2 effective January 1, 2011.  This letter was a breach of Contract #2's non-termination provisions and was more than two months prior to the end of the 2011 contract year.

56.    In addition, the SIEMENS DEFENDANTS put forth the same self-serving rationale for termination; i.e.,  "the present state does not favor the terms of the contract."  In the letter, the SIEMENS DEFENDANTS demanded a new contract with "new contractual conditions".

57.    As with Contract #1, Contract #2 contained an implied promise of good faith and fair dealing.  This means that neither party would do anything to unfairly interfere with the right of the other to receive the benefits of the contract.  The SIEMENS DEFENDANTS' termination of Contract #2 for no reason other than because the SIEMENS DEFENDANTS wanted to increase their ability to usurp GN TRADE's goodwill and market, violates the covenant of good faith and fair dealing as more fully alleged below.

58.    In addition, Plaintiffs later learned that the SIEMENS DEFENDANTS were providing Back Shop product, using the Bäcker Bäck trademark to at least one other distributor, BRIGHTON BAZAAR, and to multiple retail stores, at a reduced price. These activities were occurring within GN TRADE's distributorship region as defined in Contract #2.

59.    Furthermore, the SIEMENS DEFENDANTS diverted containers with Bäcker Bäck trademark product to their own use.

**CONTRACT #3**

60.    As with Contract #2, the SIEMENS DEFENDANTS attempted to coerce GN TRADE to accept a third contract.  A copy of Contract #3, prepared by the SIEMENS DEFENDANTS, is attached as **Exhibit E**.  GN TRADE refused to sign Contract #3, demanding reinstatement of Contract #1, now realizing that the SIEMENS DEFENDANTS had used unlawful coercion to gain Contract #2 and were attempting the same tactics for Contract #3.

61.     When Plaintiffs refused to capitulate to Defendants' coercion, the SIEMENS DEFENDANTS ceased providing *all* Back Shop Product to GN TRADE on or before December, 2010.

62.     At this point, Plaintiffs had no choice but to avoid expenditure of further capital, advise of their intention to cease working with the SIEMENS DEFENDANTS in light of their unreliability and seek product through another venue.

**Material Changes in Contract #3**

63.     Contract #3 was even more restrictive:

(a)     Three products, instead of four;

(b)     Limited to 6 states;

(c)     Removed GN TRADE's exclusive rights to distribute to all Whole Foods stores; eliminated the "reserved" states, so that GN TRADE would not be able to increase its distribution beyond the designated 6 states;

(d)     GN TRADE would be required to sell no less than 72 containers per year (using only 3 products and within 6 states, and having lost Whole Foods);

(e)     A provision was added restricting GN TRADE from purchasing the product from anyone other than the SIEMENS DEFENDANTS (no doubt because the five-year exclusive distributorship between the SIEMENS DEFENDANTS and Back Shop is due to expire December 31, 2011.)

(f)     GN Trade would have to *apply* in order to distribute in additional states and would be strictly prohibited from distributing in seventeen (17) states.

(g)     The SIEMENS DEFENDANTS further attempted to limit their liability by no longer accepting sole responsibility for shipping.  There is no provision for reimbursement to GN TRADE if shipment is lost or otherwise diverted.  In other words, the SIEMENS DEFENDANTS would be able to divert the product for which GN TRADE pre-paid, sell it and GN TRADE would simply be out the cost of the product.

64.     The end result is that *the SIEMENS DEFENDANTS would recognize 100% profit*.

///

**CONVERSION, TRADEMARK INFRINGEMENT & SLANDER**

65.    An application was submitted to the United States Patent and Trademark Office for the Bäcker Bäck Trademark on December 29, 2006.  The first use of the logo, by GN TRADE, was January 12, 2007, GN TRADE placed the Trademark into commerce January 22, 2007 and the Trademark was officially registered June 3, 2008, USPTO Reg. No. 3,441,537.  (**Exhibit A.**)

66.    A sample of GN TRADE's Trademark (including the ® allowed for a federally registered trademark) is attached as **Exhibit F**.

67.    In or about March 2007, Plaintiffs began to notice that they were not receiving all the product they ordered.  It occurred again, to Plaintiffs' knowledge, in or about December, 2010.  In fact, it appeared that whole containers had gone missing.

68.    Shortly, thereafter, Plaintiffs learned that the SIEMENS DEFENDANTS were providing the diverted product (with the Bäcker Bäck trademark) to BRIGHTON BAZAAR, who was then distributing it *in GN TRADE's exclusive distribution territory*.

69.    In or about March 14, 2010 Plaintiffs were contacted by one of their customers, European Delights who told them the SIEMENS DEFENDANTS sold them Back Shop product, *with* the Bäcker Bäck logo.

70.    According to European Delights, SIEMENS claimed he was the majority owner (51%) of GN TRADE and that SIEMENS would enter into a contract (between SIEMENS IT and European Delights) to provide them with all the product they could distribute at the reduced price.  In addition, SIEMENS gave European Delights GN TRADE's printed material (with the Bäcker Bäck trademark) for their use including, catalogs, posters, marketing material, etc.

71.    On the strength of these representations, European Delights obtained orders from other bakeries for the Bäcker Bäck brand product.

72.    GN TRADE was forced to retain legal counsel, who apprised European Delights of SIEMENS' misrepresentations, unauthorized appropriation of GN TRADE's trademark and materials and demanded European Delights cease and desist selling Back Shop product using GN TRADE's protected trademark.  GN TRADE expended approximately $10,000 in an attempt to mitigate the damages caused by SIEMENS' misrepresentations.

73.     Upon discovering SIEMENS' misrepresentations, European Delights was compelled to cancel the orders.  As a result, European Delights has suffered loss of goodwill, damage to their reputation and monetary damages for inability to fulfill orders.

74.     The SIEMENS DEFENDANTS also sold GN TRADE's product, both with and without the Bäcker Bäck trademark to GN TRADE's own customers, including, but not limited to: (1) Olma – XXI, Inc. Wholesale Distributors, (2) Mike's Distribution, Inc., and (3) Elite Distribution.

75.     The SIEMENS DEFENDANTS have systematically diluted GN TRADE's exclusive distributorship, reduced GN TRADE's ability to expand its market, diverted Back Shop product that was to have gone to GN TRADE and prevented GN TRADE from obtaining Back Shop product so that now, GN TRADE is completely without product and dead in the water.

76.     At the same time, the SIEMENS DEFENDANTS have, using GN TRADE's established goodwill, taken over the market GN TRADE has painstakingly built up over the last seven (7) years.

77.     The SIEMENS DEFENDANTS managed this by whittling away at the original Exclusive Distributorship they originally promised GN TRADE, and building in to the revised contracts loopholes that would allow the SIEMENS DEFENDANTS to obtain the product, at no cost to themselves, and sell it for a profit to GN TRADE's clientele.

78.     Plaintiffs are informed and believe, and on this basis allege, that the SIEMENS DEFENDANTS have, at one time or another, diverted product from GN TRADE's California, Oregon, Washington, Chicago, Georgia & New York markets for lost profit to GN TRADE in an amount to be proven at trial.

79.     As of December 2010, when GN TRADE refused to sign Contract #3, the SIEMENS DEFENDANTS ceased all shipments to GN TRADE.

**PLAINTIFFS' DEMANDS THAT DEFENDANTS CEASE AND DESIST**

80.     Plaintiffs have repeatedly requested Defendants cease and desist their trademark infringement activities.  Plaintiffs' counsel wrote to Defendants SIEMENS and SIEMENS IT on

December 17, 2010 requesting they cease their unlawful activities.  On December 24, 2010 Plaintiffs' counsel issued cease and desist letters to entities believed to be selling Back Shop product in violation of GN TRADE's registered trademark and/or exclusive distribution rights including, but not limited to: (1) Olma – XXI, Inc. Wholesale Distributors, (2) Mike's Distribution, Inc., and (3) Elite Distribution.

81.   On December 24, 2010, Plaintiffs' counsel wrote to the SIEMENS DEFENDANTS concerning the fact they were in possession of GN TRADE's product and labels and demanding cessation of manufacturing, distributing, sale, etc. with respect to the counterfeited Trademark product.

82.   On December 28, 2010, Plaintiffs' counsel wrote to BRIGHTON BAZAAR demanding they cease and desist their violation of Plaintiffs' protected Trademark rights and exclusive distributorship rights.

## CONTINUING ACTIONS

83.   Despite Plaintiffs' demands, Defendants continue to engage in Trademark infringement, conversion of GN TRADE's product and violation of its exclusive distributorship.

84.   On January 26, 2011, Plaintiffs' counsel again communicated with Defendants (this time through Defendants' designated attorney) advising that Plaintiffs had learned SIEMENS was, in addition to having previously claimed ownership of GN TRADE and a right to the Bäcker Bäck trademark, making untrue representations to GN TRADE's customers that GN TRADE had filed for bankruptcy and/or was no longer in business.

85.   SIEMENS continued his slander as well by making false representations that GN TRADE has filed for bankruptcy and/or is no longer in business.

86.   In addition, Plaintiffs are informed and believe, and on that basis alleged, that the SIEMENS DEFENDANTS are now realizing approximately $800,000 in sales of Back Shop Bread.  It is highly unlikely that the SIEMENS DEFENDANTS are managing this volume of sales through a single retail store (BRIGHTON BAZAAR).  Rather, the circumstances indicate and information provided to Plaintiffs supports the belief that the SIEMENS DEFENDANTS are now distributing Back Shop product throughout a large region in the U.S. (the same region

developed by GN TRADE through hard work and diligence) – either directly or through
BRIGHTON BAZAAR (acting as a distributor).

### **PLAINTIFFS' ATTEMPTS TO MITIGATE DAMAGES**

87.    Plaintiffs have attempted to protect their Trademark and exclusive distributorship
through communication and discussion as detailed above, to no avail.  In the meantime, they are
making every effort to increase other areas of their business to try to reduce some of the shortfall
created by the loss of the Back Shop product.

### **FIRST CAUSE OF ACTION**
**Infringement of Federally-Registered Trademark**
**Under Section 32 of The Lanham Act (15 USC §1114)**
**Against All Defendants**

88.    Plaintiffs re-allege and reincorporate each and every allegation contained in the
General Allegations and all previous paragraphs, inclusive, as though fully set forth herein.

89.    GN TRADE owns the federally-registered trademark Bäcker Bäck®.  This
trademark has become uniquely associated with, and hence identifies, GN TRADE as the source
of high quality European bakery products from Back Shop Tiefkühl GmbH.

90.    By continuing to sell products under the designation "Bäcker Bäck®" without
Plaintiffs' permission, Defendants are likely to cause confusion, to cause mistake, or to deceive
consumers into believing, initially and otherwise, that the products they are selling are actually
Bäcker Bäck® -branded products or are produced or endorsed by, or in association with
Plaintiffs.

91.    Pursuant to 15 U.S.C. §1114, Defendants' conduct constitutes an infringement of
the Registered Mark.

92.    As a result of Defendants' trademark infringement, Plaintiffs have incurred and will
continue to incur damages in an amount to be proven at trial, consisting of, among other things,
actual diversion of trade and diminution in the value of the goodwill associated with the
Registered Mark.

93.    Defendants' actions as described above are deliberate, willful, fraudulent, and
without extenuating circumstances, and constitute a knowing violation of Plaintiffs' rights.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

**SECOND CAUSE OF ACTION**
**Trademark Infringement –False Designation of Origin**
**Under Section 43(a)  Of the Lanham Act (15 USC §1125)**
**Against All Defendants**

94.    Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

95.    GN TRADE's Bäcker Bäck mark has become uniquely associated with, and hence identifies, GN TRADE as the source of Back Shop Tiefkühl GmbH bakery products sold in the United States under the Bäcker Bäck trademark.  Defendants' interstate use of the designation "Bäcker Bäck" is a trademark infringement and false designation of origin, or false representation, which wrongfully and falsely designates Defendants' products as originating from, or being sponsored by or associated with GN TRADE and constitutes the use of false descriptions or representations in interstate commerce.  Defendants' use of "Bäcker Bäck" is likely to deceive consumers into believing that Plaintiffs are associated with Defendants to Plaintiffs' damage.

96.    Defendants' actions described above, and specifically Defendants' use of "Bäcker Bäck" to promote goods, constitutes trademark infringement, a false designation of origin, and unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

97.    Defendants' use of "Bäcker Bäck" has caused, and continues to cause, irreparable injury to the value and goodwill of Plaintiffs' mark, as well as to Plaintiffs' business, goodwill and reputation.  Defendants' actions, if not enjoined, will continue, including their sale of products through the same channels of trade used by Plaintiffs and to customers targeted by Plaintiffs and their authorized distributors.  Plaintiffs have no adequate remedy at law in that the amount of their damages is difficult to ascertain with certainty.

98.    As a result of Defendants' actions as described herein, Plaintiffs have incurred and will continue to incur damages in an amount to be proven at trial consisting of, among other things, actual diversion of trade, and diminution in the value of the goodwill associated with their

trademark.

99.   Defendants' actions as described herein are willful, deliberate, fraudulent and without any extenuating circumstances, constituting a knowing violation of Plaintiffs' rights.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

**THIRD CAUSE OF ACTION**
**Breach of Written Contract**
**Against SIEMENS and SIEMENS IT re: Contract # 1**

100.   Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

101.   On or about January 2, 2007, at Sacramento, California in the County of Sacramento, Plaintiffs and Defendants entered into a written agreement, a copy of which is attached as **Exhibit C** and incorporated by reference and hereinafter referred to as Contract #1.

102.   Plaintiffs at all times performed the terms of Contract #1 in the manner specified by the contract, except to the extent they have been prevented from performing by Defendants' breach.

103.   Defendants, and each of them, have failed and refused, and continue to refuse, to tender their performance as required by Contract #1.  This includes that Defendants breached the contract beginning in or about September 2008, by during the non-termination period, purporting to terminate Contract #1, effective January 1, 2009, more than 12 months prior to the end of the contract year.

104.   Defendants further breached Contract #1 by (a) asserting pretextual reasons for termination including that "the present state does not favor the terms of the contract"; (b) demanding a new contract with "new contractual conditions"; and (c) coercing Plaintiffs into signing a second contract with material changes in terms with the result Plaintiffs' market share has been drastically reduced, their risk increased and the potential gain radically cut back.

105.   In addition, Defendants breached Contract #1 by, within the geographic region covered by Plaintiffs' exclusive distributorship, (a) providing Back Shop product, using the

Bäcker Bäck trademark, to at least one other distributor; (b) providing Back Shop product, using the Bäcker Bäck trademark, to multiple retail stores; (c) providing Back Shop product, after removing the Bäcker Bäck trademark, to at least one other distributor; (d) providing Back Shop product, after removing the Bäcker Bäck trademark, to multiple retail stores; and (e) providing Back Shop product, both with and without the Bäcker Bäck trademark at a price designed to undercut Plaintiffs.

106.  Defendants also breached Contract #1 by diverting containers with Bäcker Bäck trademark product for their own use.

107.  Defendants have breached the contract by refusing, and continuing to refuse, to provide Back Shop products to Plaintiffs as provided in Contract #1.

108.  Defendants' actions have caused permanent harm to Plaintiffs' distribution system and reduced its market.

109.  Defendants' failure and refusal to perform its obligations under Contract #1 has directly damaged Plaintiffs through the loss of profit, in an amount to be proved at trial.

110.  Further, Defendants' breach of Contract #1 has caused Plaintiffs to lose the benefit of the money, in an amount to be proved at trial, Plaintiffs invested to launch the Bäcker Bäck brand.

111.  In addition, Plaintiffs have been damaged in an amount according to proof for the months of lost opportunities to deal with other distributors and retailers and to expand its marketing territory.

112.  Defendants have made it impossible for Plaintiffs to perform under Contract #1 by breaching the contract and permanently harming the distribution system for the Bäcker Bäck brand.  Plaintiffs, therefore, have suffered damages as a direct and foreseeable result of Defendants' breach of the written contract in an amount according to proof.

113.  Pursuant to the terms of Contract #1, Plaintiffs are entitled to monetary damages from Defendants in the amount of $5,000 for each and every breach of Contract #1 engaged in by Defendants.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as

more fully set forth below.

## FOURTH CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing
### Against SIEMENS and SIEMENS IT re: Contract # 1

114.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

115.  On or about January 2, 2007, Plaintiffs and Defendants entered into a written agreement ("Contract #1"), a copy of which is attached as **Exhibit C** and incorporated by reference.

116.  Pursuant to the terms of Contract #1, Plaintiffs agreed to become the sole distributor of Back Shop bakery products in the United States.  Plaintiffs agreed to provide their best efforts to increase sales to a minimum of 5 shipping containers per month, within 6 months.  (Contract #1, ¶¶ 1 and 3(1).)  Defendants agreed to grant Plaintiffs the sole distribution rights to the Back Shop products, to sell Back Shop products in the United States only under the Bäcker Bäck brand and only through Plaintiffs.  Defendants also agreed they would not distribute directly in the United States and would forward all requests for product to Plaintiffs.   (Contract #1 ¶¶1, 2(1), 2(2), 2(3).)  Defendants promised not to "work with any other distributor" in the United States.  (Contract #1 ¶3(2).)

117.  In entering into Contract #1, the parties contemplated Plaintiffs would build the market for Back Shop products throughout the United States, using the Bäcker Bäck brand, that Defendants would obtain the product from the producer and act as supplier for the product to Plaintiffs who would be the sole distributor.

118.  Plaintiffs have performed all conditions, covenants, and promises required on Plaintiffs' part to be performed in accordance with the terms and conditions of the contract, and have expended to date sums, in an amount to be proven at trial, for (a) the purpose of registering the Bäcker Bäck trademark with the United States Patent and Trademark office, (b) soliciting and obtaining business to sell the product to the public at retail and/or wholesale, (c) arranging for storage facilities and warehouses in various states, and (d) arranging for shipment of the

product from the warehouses in the United States to the stores where the product is sold.

119. Defendants' breached the implied covenant of good faith and fair dealing thus unfairly preventing Plaintiffs from receiving the benefits of Contract #1 as follows:

120. In or about September 2008, during the non-termination period, purporting to terminate Contract #1, effective January 1, 2009, more than 12 months prior to the end of the contract year;

121. By (a) asserting pretextual reasons for termination including that "the present state does not favor the terms of the contract"; (b) demanding a new contract with "new contractual conditions"; and (c) coercing Plaintiffs into signing a second contract with material changes in terms with the result Plaintiffs' market share has been drastically reduced, their risk increased and the potential gain radically cut back;

122. By, within the geographic region covered by Plaintiffs' exclusive distributorship, (a) providing Back Shop product, using the Bäcker Bäck trademark, to at least one other distributor; (b) providing Back Shop product, using the Bäcker Bäck trademark, to multiple retail stores;  (c) providing Back Shop product, after removing the Bäcker Bäck trademark, to at least one other distributor; (d) providing Back Shop product, after removing the Bäcker Bäck trademark, to multiple retail stores; (e) providing Back Shop product, both with and without the Bäcker Bäck trademark at a price designed to undercut Plaintiffs.

123. By diverting shipping containers with Bäcker Bäck trademark product for Defendants' own use.

124. By refusing, and continuing to refuse, to provide Back Shop products to Plaintiffs as provided in Contract #1.

125. Defendants, by these actions, effectively made it impossible for Plaintiffs to recoup any of the money Plaintiffs have expended under Contract #1 for expansion of the market, and have now prevented Plaintiffs from obtaining *any* Back Shop product, effectively destroying their business.  In acting in the manner described, Defendants violated the implied covenant of good faith and fair dealing that exists in Contract #1 between Plaintiffs and Defendants.

126. As a result of Defendants' breach, Plaintiffs have suffered damages in an amount to

be proven at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

**FIFTH CAUSE OF ACTION**
**Rescission of Contract #2**
**Against SIEMENS and SIEMENS IT**

127.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

128.  On or about January 21, 2009, at Sacramento, California in the County of Sacramento, Plaintiffs and Defendants entered into a written contract whereby Plaintiffs agreed to exert their "best effort to increase sales", within the newly restricted distributorship area of the reduced Back Shop products to be provided by Defendants and Defendants agreed to "grant the distribution rights for the contract region, only to [Plaintiffs]."  A copy of the contract is attached as **Exhibit D** and incorporated by reference and hereinafter referred to as Contract #2.

129.  Beginning in or about September, 2008 through and including January 21, 2009, Defendants coerced, induced and otherwise forced Plaintiffs, under duress, to enter into Contract #2 by threatening, orally and in writing, to stop all shipments of Back Shop products to Plaintiffs if Plaintiffs did not agree to terminate Contract #1 and sign Contract #2.

130.  Defendants fraudulently represented to Plaintiffs that, if they refused to enter into a new contract, Defendants would be entitled to sell Back Shop products to anyone and everyone of their choosing.

131.  The representations made by Defendants were in fact false. The true facts were that Plaintiffs were entitled to the benefit of the bargain they entered into via Contract #1 and that Defendants threats to cease shipments of product constituted fraud, duress and undue influence, as those terms are defined under California Civil Code §1689(b)(1).  The truth is that Defendants sought to avoid the terms of Contract #1 because, thanks to Plaintiffs' efforts in marketing, Defendants were realizing the strong market in the United States for Back Shop bakery products. Defendants wanted to obtain the distributorship, and subsequent profit, of Back Shop products

and, therefore, sought a way to cut Plaintiffs out.

132. The truth was that Contract #2 was likewise defective for a failure of consideration as defined in California Civil Code §1689(b)(2). In fact, there was no consideration for Plaintiffs to enter into Contract #2 because it offered no additional remuneration to Plaintiffs in exchange for their relinquishment of significant rights and privileges contained in Contract #1.

133. At the time the representations were made, and at the time Plaintiffs entered into Contract #2, and at the time Plaintiffs rendered their performance under Contract #2, Plaintiffs did not know the representations were false, nor that there was a lack of consideration, but believed them to be true and reasonably relied on them. Had Plaintiffs known the true facts, they would not have entered into Contract #2 and would not have rendered or accepted performance thereunder.

134. Under the terms of Contract #2, Plaintiffs increased the market for the Back Shop product and ordered from and paid for shipment of said product from Defendants.

135. Plaintiffs paid for product in an amount to be proven at trial.

136. In or about December 2010, Plaintiffs discovered the true facts to be those alleged in paragraphs 128 and 129, above. Plaintiffs learned Defendants were providing Back Shop product to distributors and retailers in the region Defendants had promised to Plaintiffs. Plaintiffs also discovered that Defendants were representing themselves as having an ownership interest in GN TRADE and trading on Plaintiffs' goodwill and established market reputation in an effort to appropriate the business for themselves.

137. Plaintiffs intend service of the summons and complaint in this action to serve as notice of rescission of Contract #2, and hereby demand that Defendants restore the consideration furnished by Plaintiffs, specifically, relinquishment of the benefits of the bargain they originally contract for in Contract #1.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

///

///

### SIXTH CAUSE OF ACTION
### Breach of Written Contract
### Against SIEMENS and SIEMENS IT re: Contract # 2

138.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

139.  Plaintiffs hereby plead, in the alternative to rescission of Contract #2, breach of said contract.

140.  On or about January 21, 2009, at Sacramento, California in the County of Sacramento, Plaintiffs and Defendants entered into a written agreement, a copy of which is attached as **Exhibit D** and incorporated by reference and hereinafter referred to as Contract #2.

141.  Plaintiffs at all times performed the terms of Contract #2 in the manner specified by the contract, except to the extent they have been prevented from performing by Defendants' breach.

142.  Defendants, and each of them, have failed and refused, and continue to refuse, to tender their performance as required by the contract.  This includes that Defendants breached Contract #2 beginning in or about September 2010, by purporting to terminate Contract #2, effective January 1, 2011, during the non-termination period, and more than 12 months prior to the end of the contract year.

143.  Defendants further breached Contract #2 by (a) asserting pretextual reasons for termination including that "the present state does not favor the terms of the contract"; (b) demanding a new contract with "new contractual conditions"; and (c) attempting to coerce Plaintiffs into signing a third contract with material changes in terms that would have further reduced Plaintiffs' market share, while simultaneously increasing their risk and reducing their potential gain.

144.  In addition, Defendants breached Contract #2 by, within the geographic region covered by Plaintiffs' exclusive distributorship, (a) providing Back Shop product, using the Bäcker Bäck trademark, to at least one other distributor; (b) providing Back Shop product, using the Bäcker Bäck trademark, to multiple retail stores; (c) providing Back Shop product, after

removing the Bäcker Bäck trademark, to at least one other distributor; (d) providing Back Shop product, after removing the Bäcker Bäck trademark, to multiple retail stores; and (e) providing Back Shop product, both with and without the Bäcker Bäck trademark at a price designed to undercut Plaintiffs.

145.  Defendants also breached Contract #2 by diverting containers with Bäcker Bäck trademark product for their own use.

146.  Defendants have breached the contract by refusing, and continuing to refuse, to provide Back Shop products to Plaintiffs as provided in Contract #2.

147.  Defendants' actions have caused permanent harm to Plaintiffs' distribution system and eliminated its market.

148.  Defendants' failure and refusal to perform its obligations under Contract #2 has directly damaged Plaintiffs through the loss of profit, in an amount to be proved at trial.

149.  Further, Defendants' breach of Contract #2 has caused Plaintiffs to lose the benefit of the money, in an amount to be proved at trial, Plaintiffs invested to launch the Bäcker Bäck brand.

150.  In addition, Plaintiffs have been damaged in an amount according to proof for the months of lost opportunities to deal with other distributors and retailers and to expand their marketing territory.

151.  Defendants have made it impossible for Plaintiffs to perform under Contract #2 by breaching the contract and permanently harming the distribution system for the Bäcker Bäck brand.  Plaintiffs, therefore, have suffered damages as a direct and foreseeable result of Defendants' breach of the written contract in an amount according to proof.

152.  Pursuant to the terms of Contract #2, Plaintiffs are entitled to monetary damages from Defendants in the amount of $5,000 for each and every breach of Contract #2 engaged in by Defendants.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

///

**SEVENTH CAUSE OF ACTION**
**Breach of the Covenant of Good Faith and Fair Dealing**
**Against SIEMENS and SIEMENS IT re: Contract # 2**

153.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

154.  On or about January 21, 2009, Plaintiffs and Defendants entered into a written agreement ("Contract #2"), a copy of which is attached as **Exhibit D** and incorporated by reference.

155.  Pursuant to the contract, Plaintiffs agreed to become the sole distributor of Back Shop bakery products in the following states: California, Colorado, Georgia, Illinois, Oregon and Washington.  Plaintiffs also agreed to be the sole distributor of Back Shop bakery products to all Whole Foods throughout the United States.  Plaintiffs agreed to provide their best efforts to increase sales to a minimum of 48 shipping containers per year.  (Contract #2, ¶¶ 1, 3(1), and Exhibits A and B to Contract #2.)

156.  Defendants agreed to grant Plaintiffs the sole distribution rights to the Back Shop products, to sell Back Shop products in the six states designated only under the Bäcker Bäck brand and only through Plaintiffs.  Defendants also agreed they would not distribute directly in Plaintiffs' territory and would forward all requests for product to Plaintiffs.  (Contract #2 ¶¶1, 2(1), 2(2), 2(3).)  Defendants promised not to "make direct shipments to the stores, customers, buyers and distributors" working with Plaintiffs.  (Contract #2 ¶2(4).)

157.  Defendants also agreed to provide contact information for potential customers in Alabama, Florida, Tennessee, Kentucky, Missouri, Ohio, North Carolina and South Carolina. The parties contemplated Plaintiffs would expand their market into these eight (8) states and, thus, would have sole distribution rights in these additional states.

158.  In entering into Contract #2, the parties contemplated Plaintiffs would build the market for Back Shop products throughout the United States, using the Bäcker Bäck brand, that Defendants would obtain the product from the producer and act as supplier for the product to Plaintiffs who would be the sole distributor.

159.  Plaintiffs have performed all conditions, covenants, and promises required on Plaintiffs' part to be performed in accordance with the terms and conditions of the contract, and have expended to date sums, in an amount to be proven at trial, for (a) the purpose of registering the Bäcker Bäck trademark with the United States Patent and Trademark office, (b) soliciting and obtaining businesses to sell the product to the public at retail and/or wholesale, (c) arranging for storage facilities and warehouses in various states, and (d) arranging for shipment of the product from the warehouses in the United States to the stores where the product is sold.

160.  Defendants' breached the implied covenant of good faith and fair dealing thus unfairly preventing Plaintiffs from receiving the benefits of the contract as follows:

161.  In or about September 2010, during the non-termination period, purporting to terminate Contract #2, effective January 1, 2011, more than 12 months prior to the end of the contract year.

162.  By (a) asserting pretextual reasons for termination including that "the present state does not favor the terms of the contract"; (b) demanding a new contract with "new contractual conditions"; and (c) attempting to coerce Plaintiffs into signing a third contract with material changes in terms with the result Plaintiffs' market share has now been eliminated.

163.  By , within the geographic region covered by Plaintiffs' exclusive distributorship, (a) providing Back Shop product, using the Bäcker Bäck trademark, to at least one other distributor; (b) providing Back Shop product, using the Bäcker Bäck trademark, to multiple retail stores;  (c) providing Back Shop product, after removing the Bäcker Bäck trademark, to at least one other distributor; (d) providing Back Shop product, after removing the Bäcker Bäck trademark, to multiple retail stores; and (e) providing Back Shop product, both with and without the Bäcker Bäck trademark at a price designed to undercut Plaintiffs.

164.  By diverting shipping containers with Bäcker Bäck trademark product for Defendants' own use.

165.  By refusing, and continuing to refuse, to provide Back Shop products to Plaintiffs as provided in Contract #2.

166.  By refusing, and continuing to refuse, to comply with paragraph 5 of Contract #2,

whereby Defendants were to provide contact information for stores in Alabama, Florida, Tennessee, Kentucky, Missouri, Ohio, North Carolina and South Carolina, as well as actively preventing Plaintiffs' expansion into this market.

167. Defendants, by these actions, effectively made it impossible for Plaintiffs to recoup any of the money Plaintiffs have expended for expansion of the market, and have now prevented Plaintiffs from obtaining *any* Back Shop product, effectively destroying their business. In acting in the manner described, Defendants violated the implied covenant of good faith and fair dealing that exists in Contract #2 between Plaintiffs and Defendants.

168. As a result of Defendants' breach, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

<u>**EIGHTH CAUSE OF ACTION**</u>
**Interference With Contractual Relations**
**Against All Defendants**

169. Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

170. Plaintiffs allege on information and believe that Defendants have willfully and deliberately committed the wrongful acts alleged herein with the intent to interfere with the contractual relations between Plaintiffs and their customers, clients, suppliers and distributors.

171. Said acts of Defendants include, but are not limited to making false representations that (a) they were owners, or partial owners, of GN TRADE; (b) they were entitled to use the Bäcker Bäck trademark; (c) that they were entitled to sell Back Shop product directly to GN TRADE's customers, clients, suppliers and distributors; (d) that they were entitled to sell Back Shop product within GN TRADE's exclusive distributorship area; (e) that GN TRADE was going out of business and/or (f) that GN TRADE was going to be filing for bankruptcy.

172. As a direct and proximate result of such wrongful acts, Plaintiffs have suffered injury and damage to their business and goodwill in an amount to conform to proof at trial, but in

no event less than the jurisdictional minimum of this Court.

173.  Plaintiffs are informed and believe, and thereon allege, Defendants' acts in interfering with Plaintiffs' contractual relations with their clients, suppliers and distributors were willful and malicious and designed to obstruct and otherwise interfere with the successful operation of GN TRADE. Plaintiffs are therefore entitled to recover exemplary and punitive damages in a sum sufficient to punish said Defendants.

### NINTH CAUSE OF ACTION
**Intentional Interference With Contract**
**Against All Defendants**

174.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

175.  Defendants, and each of them, knew of Plaintiffs' existing contracts and business relationships with European Delights and various retailers and distributors to whom Plaintiffs shipped samples and orders.

176.  Despite knowing of these contracts and existing business relationships, Defendants, and each of them, intentionally interfered with those contracts and business relationships by making false representations that (a) they were owners, or partial owners, of GN Trade; (b) they were entitled to use the Bäcker Bäck trademark; (c) that they were entitled to sell Back Shop product directly to GN Trade's customers, clients, suppliers and distributors; (d) that they were entitled to sell Back Shop product within GN Trade's exclusive distributorship area; (e) that GN Trade was going out of business and/or (f) that GN Trade was going to be filing for bankruptcy.

177.  Defendants, and each of them, further intentionally interfered with those contracts and business relationships by failing to maintain sufficient inventory to service orders, by converting shipments that were to have been delivered to Plaintiffs' warehouses, by failing to communicate, and by breaching its contract with Plaintiffs beginning in or about December, 2010 and continuing through the present, thereby causing permanent harm to the distribution system put in place by Plaintiffs.

178.  As a direct and proximate result of Defendants' actions and omissions, Plaintiffs

were damaged in an amount according to proof due to the loss of ongoing sales under both Contract #1 and Contract #2 due to Defendants' damage to and interference with Plaintiffs' existing contracts and business relationships with various retailers and distributors, including but not limited to European Delights, for the sale of Back Shop products and other products.

179.  As a direct and foreseeable consequence of Defendants' interference, Plaintiffs' reputation in the industry and with its customers has been permanently damaged in an amount according to proof.

180.  Defendants' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of Plaintiffs' rights, and, therefore, Plaintiffs are entitled to an award of exemplary and punitive damages against Defendants, and each of them, in an amount according to proof.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

<u>**TENTH CAUSE OF ACTION**</u>
**Negligent Interference With Business Relationships**
**Against All Defendants**

181.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

182.  By failing to properly perform their obligations under the Exclusive Distributorship Agreement(s), by breaching the contract(s) with Plaintiffs, and by selling Back Shop product within Plaintiffs' exclusive distributorship area, Defendants, and each of them, negligently interfered with Plaintiffs' existing business relationships with its retail customers and distributors throughout the United States.

183.  As a direct and proximate result of Defendants' negligent interference, Plaintiffs have been damaged in an amount according to proof.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below:

///

### ELEVENTH CAUSE OF ACTION
**Intentional Interference With Prospective Economic Advantage
Against All Defendants**

184.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

185.  Defendants, and each of them, knew of Plaintiffs' ongoing business relationships with European Delights and various retailers, wholesalers and distributors, and knew of Plaintiffs' marketing of the Back Shop product under the Bäcker Bäck brand around the United States.  Defendants knew Plaintiffs had been successful in distributing and marketing the Back Shop product through their personal efforts and hard work over the years.

186.  Through Defendants' breach of the Exclusive Distributorship Agreement(s), their failure to support Plaintiffs' marketing and distribution efforts as agreed therein, through their direct interference in same, and by selling Back Shop product within Plaintiffs' exclusive distributorship area, Defendants, and each of them, intentionally interfered with Plaintiffs' prospective economic advantage from ongoing relationships with European Delights and various other wholesalers, retailers and distributors throughout the United States.

187.  As a direct result of Defendants' actions and omissions, Plaintiffs have been damaged in an amount according to proof.

188.  As a proximate result of such wrongful acts, Plaintiffs have suffered injury and damage to their business and goodwill in an amount to conform to proof at trial, but in no event less than the jurisdictional minimum of this Court.

189.  Plaintiffs allege on information and belief that Defendants' willfully and deliberately committed the wrongful acts alleged herein with the intent to harm Plaintiffs financially and to induce Plaintiffs' existing clients, retail customers, wholesalers and distributors and suppliers to sever their present and prospective business relationships with Plaintiffs.

190.  Defendants' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of Plaintiffs' rights, and, therefore, Plaintiffs are entitled to an award of

exemplary and punitive damages against Defendants, and each of them, in an amount according to proof.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

## TWELTH CAUSE OF ACTION
### Negligent Interference with Prospective Economic Advantage
### Against SIEMENS and SIEMENS IT

191.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

192.  As a party and/or signatory to the Exclusive Distributorship Agreements, Defendants owed a duty of care to refrain from interfering with Plaintiffs' prospective economic advantages.

193.  In engaging in the wrongful conduct described herein, Defendants negligently failed to take ordinary precautions to avoid interfering with Plaintiffs' prospective business opportunities and to avoid causing Plaintiffs' injury as a result. Defendants thus breached the duty of care owed to Plaintiffs.

194.  As a proximate result of Defendants' breach of duty owed to them, Plaintiffs have suffered injury and damage to their business and goodwill in an amount to conform to proof at trial, but in no event less than the jurisdictional minimum of this Court.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

## THIRTEENTH CAUSE OF ACTION
### Common Law Unfair Competition
### Against All Defendants

195.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

196.  By virtue of Defendants' acts as pleaded above, including, but not limited to: trademark infringement, breach of contract, interference with Plaintiffs' contractual relations,

interference with Plaintiffs' prospective economic advantage, Defendants have engaged in unfair competition with Plaintiffs.

197.  Defendants' unfair competition practices have injured Plaintiffs, and will continue to cause irreparable injury to Plaintiffs.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

**FOURTEENTH CAUSE OF ACTION**
**Unfair Competition In Violation Of**
**Cal. Bus. & Prof. Code §17200 Et. Seq.**
**Against All Defendants**

198.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

199.  Plaintiffs are informed and believe and on that basis thereon allege, Defendants' use of the Bäcker Bäck trademark as well as the distribution system, contacts, clients, retailers and wholesalers established by Plaintiffs, without Plaintiffs' consent, to compete against Plaintiffs as described herein constitutes unlawful, unfair, and/or fraudulent business practices in violation of Section 17200 et seq. of the California Business and Professions Code and California common law.

200.  The SIEMENS DEFENDANTS have engaged in a pattern of unfair business practices whereby they have induced Plaintiffs to enter into an Exclusive Distributorship Agreement whereby Plaintiffs are required, and have, established a market for Back Shop products.  Once the market is established, the SIEMENS DEFENDANTS' practice has been to coerce Plaintiffs (by dint of threatening to withhold product) into signing a new contract that is less advantageous to Plaintiffs and more advantageous to the SIEMENS DEFENDANTS.

201.  BRIGHTON BAZAAR and Does 1-25 have engaged in a pattern of unfair business practices whereby they have sold Back Shop product, both with and without the Bäcker Bäck trademark in Plaintiffs' exclusive distributorship area.

202.  By way of these unfair business practices, Defendants have now usurped Plaintiffs'

successful distribution and marketing system of the Back Shop product.

203.  Pursuant to Sections 17200 et seq. of the California Business and Professions Code, unfair business practices include any unlawful, unfair or fraudulent business practice.  The fraudulent and unlawful conduct of Defendants as alleged herein is an unlawful and fraudulent practice within the provisions of Sections 17200 et seq. of the California Business and Professions Code, and, accordingly, constitutes a violation of Sections 17200 et seq. of the California Business and Professions Code.

204.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer substantial pecuniary losses and irreparable injury to their business reputation and goodwill. Defendants' actions, if not enjoined, will continue through the same channels of trade used by Plaintiffs and to the same customers targeted by Plaintiffs.  As such, Plaintiffs' remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to temporary, preliminary and permanent injunctive relief.

205.  By reason of such wrongful acts, Plaintiffs were and are, and will be in the future, deprived of the profits and benefits of said business relationships, agreements, and transactions with various existing and/or prospective clients, retailers, customers, wholesalers, distributors and/or suppliers, and Defendants have wrongfully obtained such profits and benefits in an amount to conform to proof at trial, but in no event less than the jurisdictional minimum of this Court.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

### FIFTEENTH CAUSE OF ACTION
**Violation Of California's Anti-Dilution Act
(Cal. Bus. & Prof. Code §14330)
Against All Defendants**

206.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

207.  Defendants' acts, as pleaded above, have caused injury and there exists a further likelihood of injury, to Plaintiffs' business reputation and of dilution of the distinctive quality of GN TRADE's Bäcker Bäck trademark and forms of advertisement of same, within California Business and Professions Code §14330.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

## SIXTEENTH CAUSE OF ACTION
### Trade Libel
### Against All Defendants

208.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

209.  Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, have made false and defamatory statements regarding Plaintiffs' products and services and that Defendants, and each of them, knew such statements were false at the time they were made. The statements were made with malice and intent to injure Plaintiffs' business and business reputation.

210.  As a result of such trade libel, Plaintiffs have suffered injury and damage to their business and goodwill in an amount to conform to proof at time of trial, but in no event less than the jurisdictional minimum of this Court.

211.  Because actions of Defendants, and each of them, were committed with malice and intent to injure, Plaintiffs are entitled to exemplary and punitive damages in a sum appropriate to punish such defendants.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

## SEVENTEENTH CAUSE OF ACTION
### Defamation
### Against All Defendants

212.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint,

inclusive, as though fully set forth herein.

213.  Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, have made false and defamatory statements regarding Plaintiffs and that Defendants, and all of them, knew that such statements were false at the time they were made.  The statements were made with malice and intent to injure Plaintiffs' personal reputations, their business and business reputation.

214.  As a result of such defamatory statements, Plaintiffs have thereby suffered injury and damage to their personal reputations, their business and goodwill in an amount to conform to proof at trial, but in no event less than the jurisdictional minimum of this Court.

215.  Because the defamatory statements were made with malice and intent to injure, Plaintiffs are entitled to exemplary and punitive damages in a sum appropriate to punish such Defendants.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

<u>EIGHTEENTH CAUSE OF ACTION</u>
Conversion
Against All Defendants

216.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

217.  Plaintiffs are and, at all times relevant herein, were the owners of or entitled to immediately possess the following items of property: a number of shipping containers, the exact amount to be proven at trial, containing Back Shop product ordered via the SIEMENS DEFENDANTS from Back Shop Tiefkühl GmbH.

218.  Defendants converted the product, valued in an amount to conform to proof at trial, but in no event less than the jurisdictional minimum of this Court, to their own use.

219.  Defendants wrongfully interfered with Plaintiffs' interests in the above-described property by undertaking the following acts:

220.  The SIEMENS DEFENDANTS, who have the FDA registration necessary to ship

Back Shop product from Germany to the U.S., diverted shipping containers of Back Shop product that was to have been delivered to GN TRADE's warehouses in the U.S. to a location of Defendants' choosing.

221.  While the SIEMENS DEFENDANTS originally came into the possession of the converted property legally, they then improperly retained it despite the demand by Plaintiffs for return of the property.  Despite Plaintiffs having submitted the necessary paperwork and payments, the SIEMENS DEFENDANTS diverted the containers to a location of their choosing.

222.  While the SIEMENS DEFENDANTS were in possession of the converted goods, they improperly sold the items to a third party or parties (including, but not limited to, BRIGHTON), after, upon some occasions, but not all, first removing the Bäcker Bäck trademark label identifying it as Plaintiffs' product for distribution.

223.  BRIGHTON sold the converted goods (received from the SIEMENS DEFENDANTS) after, upon some occasions, but not all, first removing the Bäcker Bäck trademark label identifying it as Plaintiffs' product.  BRIGHTON sold the converted goods, for its own economic gain, within GN TRADE's exclusive distribution area.

224.  As a result of Defendants' acts of conversion, Plaintiffs have been damaged in the sum or sums to be proven at trial, including all compensatory damages.

225.  In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of Plaintiffs' rights, and Plaintiffs are therefore entitled to punitive damages according to proof at the time of trial.

226.  Plaintiffs are further entitled to the imposition of a constructive trust on the converted goods and their fruits and are entitled to a tracing with respect to the converted goods.

227.  Plaintiffs are further entitled to the imposition of an equitable lien on the converted goods.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

//

//

## NINETEENTH CAUSE OF ACTION
### Fraud
### Against SIEMENS and SIEMENS IT

228.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

229.  Plaintiffs are informed and believe and thereon allege that SIEMENS, who made the representations herein, is the authorized agent of SIEMENS IT, and at the time of making the representations herein alleged, and at all times herein mentioned, was acting within the course and scope of his agency and authority for SIEMENS IT.

230.  On or about the dates indicated, SIEMENS on behalf of SIEMENS IT made the following representations to Plaintiffs:

    a.    In or about 2004, SIEMENS represented he would work with DEMIN to establish a successful import business to import quality German products to the U.S.

    b.    Beginning in or about 2005, when SIEMENS and DEMIN were to the point of needing to invest funds into product and storage SIEMENS represented the venture would be better served if he remained in Germany, leaving to DEMIN sole ownership of GN Trade.

    c.    Beginning in or about 2005, SIEMENS represented that 10% of the product cost would be more than enough compensation for him.

    e.    In or about 2006, SIEMENS, represented that GN Trade and SIEMENS IT were "one group".

    f.    In or about 2006, based on these misrepresentations, SIEMENS induced Thomas Blohm to sign a five-year exclusive distribution agreement ("the German agreement") with SIEMENS IT.

    g.    In or about January 2007, SIEMENS agreed to give to Plaintiffs exclusive distribution rights to Back Shop products.

    h.    In or about January 2007, SIEMENS represented that neither he nor SIEMENS IT would work with any other distributor in the U.S. region.

i.      Siemens represented that, upon request, the SIEMENS Defendants would cease shipping to any third party who sells product in GN TRADE's contract region.

j.      SIEMENS represented SIEMENS IT would bear sole responsibility for shipping issues and would reimburse Plaintiffs with regard to same.

k.      SIEMENS represented that the exclusive distributorship would be non-terminable for a period of two years.

l.      On or about January 21, 2009, the SIEMENS DEFENDANTS coerced Plaintiffs into signing Contract #2 by threatening to stop delivery of all Back Shop products to GN TRADE.

m.      SIEMENS represented that, under Contract #2, GN TRADE would have the exclusive distribution rights for Back Shop product in six states, with another 8 to be "held in reserve" for future development of an exclusive distributorship.

n.      SIEMENS represented that this new exclusive distributorship would be non-terminable for a period of two years.

h.      Beginning in or about January 2007, and through January 2011, SIEMENS continued to represent that he and SIEMENS IT would put forth their honest, best efforts to work with Plaintiffs to build the exclusive distributorship by promptly providing high-quality Back Shop bakery products and dealing fairly with Plaintiffs in the course of same.

231.   The representations made by Defendants were in fact false. The true facts were:

A.      SIEMENS made the representations to Plaintiffs in order to induce them into performing the necessary ground work, investing the necessary funds and putting in the efforts needed to build a successful distribution and marketing system for Back Shop products.

B.      SIEMENS had no intention of making any investment, either financially or physically, into building up GN TRADE.

C.      SIEMENS' real reason for claiming he would serve the enterprise better in Germany was in order to avoid having to invest time or money into GN Trade and in order to be able to control the product moving to the U.S.

D.      Once the marketing and distribution system was in place, Defendants

COMPLAINT - 40

intended to reduce GN TRADE's distribution area and, eventually, take over the market in its entirety.

E.     SIEMENS wrote the exclusive distributorships with termination and revision in mind.

F.     SIEMENS arranged the exclusive distributorship contract with Back Shop Tiefkühl GmbH in order to prevent GN TRADE from obtaining product directly from Back Shop.

G.     SIEMENS had no intention of abiding by the implied promise of good faith and fair dealing that is incorporated into every contract in California.

H.     Defendants were providing Back Shop product directly, or indirectly, to businesses within GN TRADE's exclusive distributorship area.

I.     The SIEMENS DEFENDANTS sold Back Shop product at a reduced price.

J.     Defendants diverted containers with Bäcker Bäck trademark product for their own use.

K.     In or about March 2010, Defendants sold European Delights bakery Back Shop product, *with* the Bäcker Bäck logo, and provided them with GN TRADE's printed marketing material for their use as well.

232.  When Defendants made these representations, they knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and induce Plaintiffs to act in reliance on these representations in the manner hereinafter stated.

233.  Plaintiffs, at the time these representations were made by Defendants and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and believed them to be true.

234.  In reliance on these representations, Plaintiffs were induced to, and did, expend the funds, in an amount to be proven at trial, necessary to establish GN TRADE, its reputations, goodwill and a market for Back Shop product.

235.  Had Plaintiffs known the actual facts, they would not have taken such action.

236.  Plaintiffs' reliance on Defendants' representation was justified because Defendants had the FDA registration necessary to ship the Back Shop product from Germany to the U.S. and also had a five-year exclusive distributorship with Back Shop.

237.  As a direct and proximate result of the fraudulent conduct of Defendants, Defendants have systematically diluted Plaintiffs' exclusive distributorship, reduced Plaintiffs' ability to expand their market, diverted Back Shop product that was to have gone to Plaintiffs and prevented Plaintiffs from obtaining Back Shop product so that now, Plaintiffs are completely without product and dead in the water.

238.  As a direct and proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial, but not less than the jurisdictional limit of this court.

239.  The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Plaintiffs of property, legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiffs to cruel and unjust hardship and done in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as more fully set forth below.

<u>**TWENTIETH CAUSE OF ACTION**</u>
**Specific Performance**
**Against SIEMENS and SIEMENS IT**

240.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

241.  The consideration set forth in the Contract to Be a Sole Distributor dated January 1, 2007 was fully and fairly bargained for and reflected the fair and reasonable value of the performance by Defendants, i.e., his taking any steps necessary to ensure Plaintiffs received Back Shop product as promised and were allowed to develop the market fully with the entire U.S. and the Contract was and is, as to Defendants just and reasonable.

242.  Plaintiffs have fully performed all conditions, covenants, and promises to be

performed on the part of Plaintiffs under the Contract.

243.  The act of providing the Back Shop product to Plaintiffs under the Contract is unique and, therefore, Plaintiffs may have no other adequate remedy at law.

244.  Accordingly, Plaintiffs are entitled to specific performance of the Contract on the part of Defendants and to recover attorneys' fees and costs.

**DEMAND FOR INJUNCTIVE RELIEF**
**Against All Defendants**

245.  Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein.

246.  By reason of Defendants' acts alleged herein, Plaintiffs have and will suffer damage to their business, reputation and goodwill and the loss of sales and profits Plaintiffs would have made but for Defendants' acts.

247.  Defendants threaten to continue, and in fact are continuing, to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Plaintiffs' irreparable damage.  It would be difficult to ascertain the amount of compensation which could afford Plaintiffs adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiffs' remedy at law is not adequate to compensate it for injuries threatened.

248.  Therefore, injunctive relieve is appropriate to prevent further damage to Plaintiffs.

**DEMAND FOR A TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury, pursuant to FRCP 38.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray:

1.     That all Defendants, their officers, agents, employees and attorneys and all those persons in active concert or participation with them be forthwith preliminarily and thereafter permanently enjoined and restrained from:

(a)     Using "Bäcker Bäck" or any other mark identical or confusingly similar to the Bäcker Bäck trademark, the Registered Mark, or any confusingly similar designation alone or in

combination with other words, as a trademark, trade name or otherwise, to market, advertise or identify products;

        (b)    Otherwise infringing any of Plaintiffs' marks;

        (c)    Unfairly competing with Plaintiffs in any manner whatsoever; and

        (d)    Causing likelihood of confusion or injury to the business reputation of Plaintiffs' symbols, labels or forms of advertisement;

2.    That Defendants be directed to file with the Court and serve on Plaintiffs within ten days after service of the injunction herein, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith;

3.    That Defendants be required to deliver up and destroy all products, devices, literature, advertising and other material bearing the infringing designation;

4.    That Plaintiffs be awarded Defendants' trademark infringement products after an accounting;

5.    That Plaintiffs be awarded past and future corrective advertising costs;

6.    That this Court declare that Contract #2 has been rescinded;

7.    For specific performance of Contract #1;

8.    Alternatively, for specific performance of Contract #2;

9.    That Plaintiffs be awarded exemplary and punitive damages in an amount to be determined;

10.    For an award of reasonable attorney's fees, witness fees, and costs incurred;

11.    For compensatory damages in an amount in excess of this Court's jurisdiction and according to proof;

12.    That the Court's award of actual damages to Plaintiffs be trebled in accordance with §35 of the Lanham Act;

13.    On Plaintiffs' Conversion Cause of Action:

        a.    for damages according to proof;

        b.    alternatively, for damages and repossession of the converted property upon election of remedies at trial by Plaintiffs;

c. for compensation for the time and money expended in pursuit of the property;

d. for the imposition of a constructive trust on the converted goods and their fruits and a tracing with respect to the converted goods;

e. for the imposition of an equitable lien on the converted property.

14. That costs of this action be awarded Plaintiffs;

15. That this Court grant such other and further relief as it shall deem just.

DATED:  April 13, 2011                 Respectfully submitted.


                                       /s/ Alla V. Vorobets_____
                                       ALLA V. VOROBETS
                                       CELIA R. BERNAL
                                       Attorney for Plaintiffs