1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   GN TRADE, INC., a California
     Corporation; VLADIMIR DEMIN;
11   VLADIMIR SCHEVCHENKO,

12                                        NO. CIV. S-11-0994 LKK/KJN
             Plaintiffs,
13
          v.
14                                        O R D E R
     ANDREAS SIEMENS, SIEMENS
15   INTERNATIONAL TRADING
     CORP.; BRIGHTON BAZAAR;
16   DOES 1-25,

17

             Defendants.
18   _____/

19        Defendant  Brighton  Bazaar  moves  to  be  dismissed  from  this

20   trademark  infringement  action  for  lack  of  personal  jurisdiction,

21   pursuant  to  Fed.  R.  Civ.  P.  12(b)(2).   For  the  reasons  set  forth

22   below,  the  motion  to  dismiss  Brighton  Bazaar  is  **GRANTED.**[1]

23   _____

24        [1] Plaintiffs,  at  the  very  end  of  their  opposition  papers,
     request jurisdictional discovery in the event the court is inclined
     to dismiss Brighton Bazaar.  Plaintiffs' Opposition at 16 (Dkt.
25   No. 22 at 21).  Plaintiffs have not filed a motion for such relief,
     nor have they made a showing that jurisdictional discovery could
26   affect the outcome of this motion.  Accordingly, the request will

                                   1

1  **I.    BACKGROUND**

2       Plaintiffs sued Brighton Bazaar, Siemens Int'l Trading Corp.,

3  and other defendants,[2] alleging claims under the Lanham Act, 15

4  U.S.C. § 1051, <u>et seq.</u>, for federal trademark infringement, and

5  also alleging several state law claims.  The Lanham Act provides

6  the holder of a federally registered trademark with "a civil action

7  against anyone employing an imitation of it in commerce when 'such

8  use is likely to cause confusion, or to cause mistake, or to

9  deceive.'"  <u>KP Permanent Make-Up, Inc. v. Lasting Impression I,</u>

10 <u>Inc.,</u> 543 U.S. 111, 117 (2004).[3]

11      Siemens imported bakery products – specifically, bread –

12 produced by the "Back Shop" of Hamburg, Germany.  Siemens provided

13 the products almost exclusively to Plaintiffs, who were the U.S.

14 distributors of these products.  Complaint ¶¶ 19-25, 33 & 35.

15 Siemens did, however, reserve for itself the right to provide the

16 products directly to two retail stores, one of which is Brighton

17 Bazaar, a retail bakery in New York.  Complaint ¶ 24.

18      Plaintiffs registered a federal trademark – "Bäcker Bäck" –

19 for the products, and distributed them under that trademark.

20 Complaint ¶ 21.  Plaintiffs allege that Siemens took product

21 intended for them, which plaintiffs would have distributed within

22 ───────────────────

23 not be considered.

24      [2] It appears that at least one of the Siemens defendants has
   filed for bankruptcy.  At the hearing on this motion, both sides
25 agreed that this development had no effect on the motion.

26      [3] <u>Quoting</u> 15 U.S.C. § 1114(1)(a).

2

their exclusive distributorship territory, and diverted it to Brighton Bazaar.  Complaint ¶¶ 48, 58, 78.  Brighton Bazaar in turn, the Complaint alleges, then distributed the product, at a cheaper price, within plaintiffs' exclusive distribution territory. Complaint ¶ 201.

## II.   ARGUMENTS

Defendant Brighton Bazaar asserts that it has never shipped a single loaf of bread into California.  Accordingly, defendant argues, it lacks the "minimum contacts" with California that is needed for this court to assert personal jurisdiction over it.

Plaintiffs argue that Brighton's alleged actions in plaintiffs' exclusive distributorship area had a devastating effect on GN Trade, a California company, thus establishing that the court can exercise "special" personal jurisdiction over defendant.[4]

## III.  STANDARD

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." CollegeSource, Inc. v. AcademyOne, Inc., ___ F.3d at ___, ___, 2011 WL 3437040 at *4 [2011 U.S. App. LEXIS 16328] (9th Cir. August 8, 2011).[5]  When, as here, the court acts on the motion without conducting an evidentiary hearing, plaintiff's burden is light: "the plaintiff need only make

---

[4] Plaintiffs concede that the court does not have "general" personal jurisdiction over defendant.

[5] Citing Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008), cert. denied, 555 U.S. ___, 129 S. Ct. 1318 (2009)

1 'a prima facie showing of jurisdictional facts to withstand the

2 motion to dismiss.'"  CollegeSource, ___ F.3d at ___, 2011 WL

3 3437040 at *4.[6]  The uncontroverted allegations in the complaint

4 are taken as true, and factual disputes are resolved in the

5 plaintiff's favor. CollegeSource, ___ F.3d at ___, 2011 WL 3437040

6 at *4.[7]

7     Plaintiff has not identified any provision in the Lanham Act,

8 or any other federal statute, that provides either for nationwide

9 service of process, or for any other basis of personal jurisdiction

10 over this defendant in this case.[8]  Accordingly, the court must

11 rely upon Fed. R. Civ. P. 4(k)(1) (personal jurisdiction over

12 defendant "who is subject to the jurisdiction of a court of general

13 jurisdiction in the state where the district court is located"),

14 and applies California law. See CollegeSource, ___ F.3d at ___,

15 2011 WL 3437040 at *4 (where "no federal statute authorizes

16 

17     [6] Quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d
1124, 1127 (9th Cir. 2010).

18     [7] Citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d
19 797, 800 (9th Cir. 2004), and Pebble Beach Co. v. Caddy, 453 F.3d
1151, 1154 (9th Cir. 2006).

20     [8] Unlike the federal securities laws, see SEC v. Ross, 504
21 F.3d 1130, 1139-40 (9th Cir. 2007) (federal securities laws provide
for nationwide service of process), and the federal Racketeer
22 Influenced and Corrupt Organizations Act ("RICO"), accord,
Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d
23 535, 538 (9th Cir. 1986) (RICO provides for nationwide service of
process "when it is shown that 'the ends of justice' require it"),
24 it appears that the Lanham Act does not provide for nationwide
service of process, accord, be2 LLC v. Ivanov, 642 F.3d 555, 558
25 (7th Cir. 2011) ("The Lanham Act does not authorize nationwide
service of process") (citing Sunward Electronics, Inc. v. McDonald,
26 362 F.3d 17, 22 (2d Cir.2004)).

4

personal jurisdiction, the district court applies the law of the state in which the court sits"). California's long-arm statute, Cal. Code Civ. Proc. § 410.10, therefore governs this inquiry, and it authorizes the court to exercise personal jurisdiction to the extent permitted by federal due process. CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4.

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Calder v. Jones, 465 U.S. 783, 788 (1984);[9] CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4.  If the nonresident defendant's contacts with the state are not sufficiently continuous or systematic to give rise to "general personal jurisdiction," the defendant may still be subject to "specific personal jurisdiction" on claims arising out of defendant's contacts with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985); Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). Specifically, a "nonresident defendant's discrete, isolated contacts with the forum" will support "specific jurisdiction" over that defendant "on a cause of action arising directly out of its forum contacts." CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *5.

---

[9] Quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

1    Whether specific jurisdiction exists is determined by a three-
2    pronged test:

3        (1) The non-resident defendant must purposefully direct
4        his activities or consummate some transaction with the
5        forum or resident thereof; or perform some act by which
6        he purposefully avails himself of the privilege of
7        conducting activities in the forum, thereby invoking the
8        benefits and protections of its laws; (2) the claim must
9        be one which arises out of or relates to the defendant's
10       forum-related activities; and (3) the exercise of
11       jurisdiction must comport with fair play and substantial
12       justice, i.e., it must be reasonable.

13   CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *6-*7.
14   Plaintiff bears the burden of satisfying the first two prongs.
15   CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *7.[10]

16       Application of the first prong of this test depends upon the
17   nature of the underlying claim.  The underlying federal claims here
18   are based upon trademark infringement, which sound in tort.
19   See Levi Strauss & Co. v. Toyo Enterprise Co., Ltd., 665 F.
20   Supp.2d 1084 (N.D. Cal. 2009) ("trademark infringement and dilution
21   ... are generally characterized as sounding in tort").[11]

22       "In tort cases, we typically inquire whether a defendant

23   _____

24       [10] Citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th
     Cir. 1990).
25
26       [11] Citing Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316,
     1321 (9th Cir. 1998).

6

'purposefully direct[s] his activities' at the forum
state, applying an 'effects' test that focuses on the
forum in which the defendant's actions were felt,
whether or not the actions themselves occurred within
the forum." The "effects" test, which derives from the
Supreme Court's decision in <u>Calder v. Jones</u>, 465 U.S.
783 (1984), requires that "the defendant allegedly must
have (1) committed an intentional act, (2) expressly
aimed at the forum state, (3) causing harm that the
defendant knows is likely to be suffered in the forum
state."

<u>CollegeSource</u>, ___ F.3d at ___, 2011 WL 3437040 at *7 (citations
omitted).[12]

Finally, there is the question whether a defendant "expressly
aimed" its tortious conduct at the forum state. It is not
sufficient that the conduct foreseeably caused injury in the forum
state. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 295
(1980) ("'foreseeability' alone has never been a sufficient
benchmark for personal jurisdiction under the Due Process Clause");
<u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1129
(9th Cir. 2010) ("'something more' than mere foreseeability [is
required] in order to justify the assertion of personal

---

[12] Quoting <u>Yahoo! Inc. v. La Ligue Contre Le Racisme</u>, 433 F.3d
1199, 1206 (9th Cir.) (*en banc*), <u>cert denied</u>, 547 U.S. 1163 (2006).

1 jurisdiction");[13] <u>Lansing v. Feast at Lele</u>, 2009 WL 800228 at *4,

2 2009 U.S. Dist. LEXIS 28380 at *10 (E.D. Cal. March 25, 2009)

3 (Karlton, J.) ("The mere foreseeability of an effect on a

4 California resident does not give rise to minimum contacts").  The

5 "something more" means "conduct expressly aimed at [or "targeting"]

6 the forum," <u>Brayton Purcell</u>, 606 F.3d at 1129, not just at the

7 plaintiff who resides in the forum.

8 **IV.  DISCUSSION**

9     **A.   Conduct in California**

10         **1.    Plaintiff's Jurisdictional Allegations.**

11     Plaintiffs allege that defendant Brighton Beach received GN

12 TRADE's "diverted," trademarked goods from defendant Siemens for

13 distribution "*in GN TRADES's exclusive distribution territory*,"

14 which includes California.[14]  Complaint ¶¶ 68 & 78 (emphasis in

15 text).  The product was diverted "from GN TRADE's Californa ...

16 [and other] markets."  Complaint ¶ 78.  Giving the Complaint the

17 benefit of every reasonable inference, plaintiffs are alleging that

18 Brighton Bazaar unfairly distributed GN TRADE's goods in

19 California, thus infringing on GN TRADE's trademark.

20         **2.    Defendant's Declarations**

21     Unfortunately for plaintiffs, defendant Brighton Bazaar has

22 submitted a sworn declaration from its Vice President and

23 Secretary, Rita Straschnow, asserting that "Brighton Bazaar has

24

25      [13] Quoting <u>Schwarzenegger</u>, 374 F.3d at 805.

26      [14] GN Trade's original "exclusive territory" was the entire U.S.

8

1   never sold any products bearing Plaintiffs' trademark and has never

2   sold or shipped bread into the state of California."   Straschnow

3   Decl. ¶ 4 (Dkt. No. 20).   She also asserts that "Brighton Bazaar

4   has never sold one loaf of bread under the name or from a box

5   containing the name Bäcker Bäck."   Straschnow Decl. ¶ 5.   Lest any

6   doubt remain, defendant further asserts that "Brighton Bazaar has

7   never sold or shipped one loaf of bread, under any name, into the

8   state of California."   Strachnow Decl. ¶ 8.   In addition,

9   Brighton's attorney has submitted a sworn declaration asserting

10  that he asked his client to check the company's records, and that

11  "Brighton's review of its records indicate that Brighton has not

12  sold any bread" to the California businesses defendant identified

13  as having received bread from Brighton.   Barrett Decl. at 10 (Dkt.

14  No. 19).

15              **3.   Plaintiffs' Response**

16      In response, plaintiffs assert, in a sworn declaration: "Based

17  on information I received from our clients, I believe some of

18  California clients, including Citrus Heights Plaza located in

19  Cirtus Heights, CA, RDM Express Food located in San Francisco, CA,

20  and Rodeo Food Distribution located in Los Angeles, CA, have also

21  received Back Shop product from Brighton Bazaar and/or Siemens IT

22  Corp."   There are two principal problems with this hedged

23  declaration.   First, it fails to commit to an assertion that Back

24  Shop product came from Brighton Bazaar, saying only that it came

25  from Brighton "and/or" Siemens.   In other words, it is entirely

26  consistent with defendant's declarations – the Back Shop product

1   could, under this declaration, have all come from Siemens IT Corp.,

2   with none of it coming from Brighton Bazaar.   Second, the

3   declaration is basically an "information and belief" allegation,

4   no more weighty than the Complaint itself, and thus not enough to

5   overcome defendant's unequivocal, sworn denials.[15]

6       B.   **Conduct Expressly Aimed at California**

7       Plaintiff argues, and supports with a declaration, that

8   Brighton Bazaar took over its other exclusive markets – that is,

9   markets other than California.[16]   Plaintiffs' argument is that by

10  taking away defendant's market in Colorado and other states,

11  defendant injured them in California, since they are a California

12  business.   Even assuming that Brighton deliberately sold Backer

13  Back product into Colorado and other states in knowing violation

14  of plaintiffs' trademark, that is not conduct that is "aimed at"

15  California.   It is conduct that is aimed at the markets in Colorado

16  and those other states.   There is not even an allegation that

17  Brighton knew that its alleged conduct was injuring a California-

18  based company.   See <u>Rogers v. Ferrari</u>, 2006 WL 335587 at *3, 2006

19  ───────────────────

20      [15] Defendant Brighton Bazaar admits that it has shipped three
    "strudel" orders into California.  But plaintiffs have never argued
21  that the three strudel orders have anything to do with this lawsuit
    – which involves "bread" sold under the Bäcker Bäck trademark – or
22  with their claim of personal jurisdiction.  Accordingly, although
    the court is aware that there appears to be something called
23  "strudel bread," the court will not further consider whether a
    shipment of three strudel shipments into California is enough to
24  establish personal jurisdiction over Brighton Bazaar.

25      [16] At the hearing on this motion, plaintiffs appear to have
    abandoned any assertion that Brighton Bazaar took over, or
26  attempted to take over its market in California.

U.S. Dist. LEXIS 17132 at *11 (E.D. Cal. February 9, 2006) (Karlton, J.) (unpublished) ("In this regard, it is significant that at oral argument plaintiff's counsel admitted that nothing in the record supported a conclusion that defendant Johnson-Norman knew that plaintiff was in California.  In the absence of such knowledge, personal jurisdiction does not exist.").

A brief review of the controlling cases helps to distinguish situations where "aiming" conduct occurred, and where it did not. The Supreme Court approved the exercise of personal jurisdiction in Calder v. Jones, 465 U.S. 783 (1984), where the "focal point" of defendants' allegedly libelous story was the forum state and its residents.[17]   Similarly, the Ninth Circuit found personal jurisidiction in Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124 (9th Cir. 2010), where the law firm defendant unfairly attempted to lure away plaintiff's California clients.[18]

----

[17] The story, in the National Enquirer, was distributed in California, to be read by a California audience.  The paper's largest circulation was in California.  The alleged wrongdoing was "intentionally directed at a California resident."  The story

> "concerned the California activities of a California resident, ... impugned the professionalism of an entertainer whose television career was centered in California, ... was drawn from California sources, ... and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."

In sum, California was "the focal point both of the story and of the harm suffered."  Calder, 465 U.S. at 788-789.

[18] In Brayton (a venue case, where venue is proper wherever "the defendant would be subject to personal jurisdiction"), defendant law firm allegedly competed unfairly for California clients, in the limited California market for elder abuse cases.

1    On the other hand, the Ninth Circuit found personal

2 jurisdiction lacking in <u>Schwarzenegger v. Fred Martin Motor Co.</u>,

3 374 F.3d 797, 800 (9th Cir. 2004), where the defendant's

4 advertising allegedly injured Arnold Schwarzenegger, a California

5 resident, but was directed only at the car dealer's local Ohio

6 community.[19]  <u>See also</u>, <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151,

7 1154 (9th Cir. 2006).[20]

8    The cases cited by plaintiffs do not hold otherwise.  In <u>Dole</u>

9 <u>Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002), the

10 court found that personal jurisdiction exists when "the defendant

11 is alleged to have engaged in wrongful conduct targeted at a

12 plaintiff whom the defendant knows to be a resident of the forum

13 state."  In <u>Dole</u>, there is "something more" than mere injury to a

14 plaintiff who is a resident of the forum state.  In that case,

15

16 Personal jurisdiction was found because there was something more
than injury to a California plaintiff – defendants specifically

17 targeted plaintiff's California practice, including of course, its
California clients.

18

19       [19]   It may be true that Fred Martin's intentional
            act eventually caused harm to Schwarzenegger

20          in California, and Fred Martin may have known
            that Schwarzenegger lived in California.  But

21          this does not confer jurisdiction, for Fred
            Martin's express aim was local.  We therefore

22          conclude that the Advertisement was not
            expressly aimed at California.

23 <u>Schwarzenegger</u>, 374 F.3d at 807.

24      [20] In <u>Pebble Beach Co. v. Caddy</u>, defendant, an Englishman,
created a website with "Pebble Beach" in the domain name,
www.pebblebeach.com.  He did this after a trip to Carmel, CA, where

25 Pebble Beach, the golf course and resort, is located.  Just
maintaining this website was not enough to confer personal

26 jurisdiction.

1   defendants "communicated directly with ... [plaintiff's] California
2   decisionmakers" in "Dole's California offices via telephone, fax and
3   mail," in fraudulently inducing those decisionmakers to lease
4   certain warehouse space.  <u>Id.</u>, 303 F.3d at 1108 & 1109.

5        In <u>Bancroft & Masters, Inc. v. Augusta National Inc.</u>,223 F.3d
6   1082 (9th Cir. 2000), the golf tournament host Augusta National,
7   a Georgia company, sent a letter to the national internet registry
8   service in Virginia (Network Solutions, Inc.), challenging
9   plaintiff's use of the Internet domain name masters.com.  This
10  triggered plaintiff's obligation to file a declaratory action
11  lawsuit to protect its right to use the website.  Plaintiff filed
12  suit in California, where it was located.  The Ninth Circuit found
13  that the California district court had personal jurisdiction over
14  Augusta National because it did "something more" than allegedly
15  injure a California resident.  Namely, it engaged in
16  "individualized targeting" of "a known forum resident."  <u>Bancroft</u>,
17  223 F.3d at 1088.

18       Plaintiffs here have made no showing of the "something more"
19  that is required to exercise personal jurisdiction over Brighton
20  Bazaar.  They have not alleged that defendant contacted them in
21  California, that it intended to damage a company it knew was based
22  in California, that it attempted to take away the California market
23  from plaintiffs, or even that defendant was aware that plaintiffs
24  were California-based or had anything to do with California or the
25  California market.  The allegation that defendant competed unfairly
26  in non-California markets where plaintiffs had exclusive

1  distributorship rights, simply is not enough to satisfy the

2  requirement that defendant's conduct must be "aimed at" California.

3  **V.    CONCLUSION**

4       For the reasons set forth above, the Motion To Dismiss the

5  complaint for lack of personal jurisdiction is **GRANTED.**   This

6  action is **DISMISSED with prejudice** as to defendant Brighton Bazaar.

7       IT IS SO ORDERED.

8       DATED:  September 29, 2011.

9

10

11                               LAWRENCE K. KARLTON

12                               SENIOR JUDGE
                                 UNITED STATES DISTRICT COURT
13

14

15

16

17

18

19

20

21

22

23

24

25

26