UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GN TRADE, INC., a California
Corporation; VLADIMIR DEMIN;
VLADIMIR SCHEVCHENKO,

        Plaintiffs,

  v.

ANDREAS SIEMENS, SIEMENS
INTERNATIONAL TRADING
CORP.; BRIGHTON BAZAAR;
DOES 1-25,

        Defendants.
_____/

NO. CIV. S-11-0994 LKK/KJN

O R D E R

Defendant Brighton Bazaar moves to be dismissed from this trademark infringement action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the motion to dismiss Brighton Bazaar is **GRANTED**.[1]

---

[1] Plaintiffs, at the very end of their opposition papers, request jurisdictional discovery in the event the court is inclined to dismiss Brighton Bazaar. Plaintiffs' Opposition at 16 (Dkt. No. 22 at 21). Plaintiffs have not filed a motion for such relief, nor have they made a showing that jurisdictional discovery could affect the outcome of this motion. Accordingly, the request will

1

## I.   BACKGROUND

Plaintiffs sued Brighton Bazaar, Siemens Int'l Trading Corp., and other defendants,[2] alleging claims under the Lanham Act, 15 U.S.C. § 1051, <u>et seq.</u>, for federal trademark infringement, and also alleging several state law claims.  The Lanham Act provides the holder of a federally registered trademark with "a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'"  <u>KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.</u>, 543 U.S. 111, 117 (2004).[3]

Siemens imported bakery products – specifically, bread – produced by the "Back Shop" of Hamburg, Germany.  Siemens provided the products almost exclusively to Plaintiffs, who were the U.S. distributors of these products.  Complaint ¶¶ 19-25, 33 & 35.  Siemens did, however, reserve for itself the right to provide the products directly to two retail stores, one of which is Brighton Bazaar, a retail bakery in New York.  Complaint ¶ 24.

Plaintiffs registered a federal trademark – "Bäcker Bäck" – for the products, and distributed them under that trademark.  Complaint ¶ 21.  Plaintiffs allege that Siemens took product intended for them, which plaintiffs would have distributed within

---

not be considered.

[2] It appears that at least one of the Siemens defendants has filed for bankruptcy.  At the hearing on this motion, both sides agreed that this development had no effect on the motion.

[3] <u>Quoting</u> 15 U.S.C. § 1114(1)(a).

2

their exclusive distributorship territory, and diverted it to Brighton Bazaar. Complaint ¶¶ 48, 58, 78. Brighton Bazaar in turn, the Complaint alleges, then distributed the product, at a cheaper price, within plaintiffs' exclusive distribution territory. Complaint ¶ 201.

## II. ARGUMENTS

Defendant Brighton Bazaar asserts that it has never shipped a single loaf of bread into California. Accordingly, defendant argues, it lacks the "minimum contacts" with California that is needed for this court to assert personal jurisdiction over it.

Plaintiffs argue that Brighton's alleged actions in plaintiffs' exclusive distributorship area had a devastating effect on GN Trade, a California company, thus establishing that the court can exercise "special" personal jurisdiction over defendant.[4]

## III. STANDARD

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." CollegeSource, Inc. v. AcademyOne, Inc., ___ F.3d at ___, ___, 2011 WL 3437040 at *4 [2011 U.S. App. LEXIS 16328] (9th Cir. August 8, 2011).[5] When, as here, the court acts on the motion without conducting an evidentiary hearing, plaintiff's burden is light: "the plaintiff need only make

---

[4] Plaintiffs concede that the court does not have "general" personal jurisdiction over defendant.

[5] Citing Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008), cert. denied, 555 U.S. ___, 129 S. Ct. 1318 (2009)

3

'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4.[6] The uncontroverted allegations in the complaint are taken as true, and factual disputes are resolved in the plaintiff's favor. CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4.[7]

Plaintiff has not identified any provision in the Lanham Act, or any other federal statute, that provides either for nationwide service of process, or for any other basis of personal jurisdiction over this defendant in this case.[8] Accordingly, the court must rely upon Fed. R. Civ. P. 4(k)(1) (personal jurisdiction over defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"), and applies California law. See CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4 (where "no federal statute authorizes

---

[6] Quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).

[7] Citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004), and Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).

[8] Unlike the federal securities laws, see SEC v. Ross, 504 F.3d 1130, 1139-40 (9th Cir. 2007) (federal securities laws provide for nationwide service of process), and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), accord, Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 538 (9th Cir. 1986) (RICO provides for nationwide service of process "when it is shown that 'the ends of justice' require it"), it appears that the Lanham Act does not provide for nationwide service of process, accord, be2 LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011) ("The Lanham Act does not authorize nationwide service of process") (citing Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir.2004)).

4

personal jurisdiction, the district court applies the law of the state in which the court sits"). California's long-arm statute, Cal. Code Civ. Proc. § 410.10, therefore governs this inquiry, and it authorizes the court to exercise personal jurisdiction to the extent permitted by federal due process. CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4.

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Calder v. Jones, 465 U.S. 783, 788 (1984);[9] CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *4. If the nonresident defendant's contacts with the state are not sufficiently continuous or systematic to give rise to "general personal jurisdiction," the defendant may still be subject to "specific personal jurisdiction" on claims arising out of defendant's contacts with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985); Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). Specifically, a "nonresident defendant's discrete, isolated contacts with the forum" will support "specific jurisdiction" over that defendant "on a cause of action arising directly out of its forum contacts." CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *5.

---

[9] Quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

5

Whether specific jurisdiction exists is determined by a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *6-*7. Plaintiff bears the burden of satisfying the first two prongs. CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *7.[10]

Application of the first prong of this test depends upon the nature of the underlying claim. The underlying federal claims here are based upon trademark infringement, which sound in tort. See Levi Strauss & Co. v. Toyo Enterprise Co., Ltd., 665 F. Supp.2d 1084 (N.D. Cal. 2009) ("trademark infringement and dilution ... are generally characterized as sounding in tort").[11]

"In tort cases, we typically inquire whether a defendant

---

[10] Citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).

[11] Citing Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998).

6

> 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." The "effects" test, which derives from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984), requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

CollegeSource, ___ F.3d at ___, 2011 WL 3437040 at *7 (citations omitted).[12]

Finally, there is the question whether a defendant "expressly aimed" its tortious conduct at the forum state. It is not sufficient that the conduct foreseeably caused injury in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980) ("'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"); Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) ("'something more' than mere foreseeability [is required] in order to justify the assertion of personal

---

[12] Quoting Yahoo! Inc. v. La Lique Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir.) (*en banc*), cert denied, 547 U.S. 1163 (2006).

7

jurisdiction");[13] <u>Lansing v. Feast at Lele</u>, 2009 WL 800228 at *4, 2009 U.S. Dist. LEXIS 28380 at *10 (E.D. Cal. March 25, 2009) (Karlton, J.) ("The mere foreseeability of an effect on a California resident does not give rise to minimum contacts"). The "something more" means "conduct expressly aimed at [or "targeting"] the forum," <u>Brayton Purcell</u>, 606 F.3d at 1129, not just at the plaintiff who resides in the forum.

**IV.  DISCUSSION**

    **A.   Conduct in California**

        **1.   Plaintiff's Jurisdictional Allegations**.

Plaintiffs allege that defendant Brighton Beach received GN TRADE's "diverted," trademarked goods from defendant Siemens for distribution "*in GN TRADES's exclusive distribution territory*," which includes California.[14] Complaint ¶¶ 68 & 78 (emphasis in text). The product was diverted "from GN TRADE's Californa ... [and other] markets." Complaint ¶ 78. Giving the Complaint the benefit of every reasonable inference, plaintiffs are alleging that Brighton Bazaar unfairly distributed GN TRADE's goods in California, thus infringing on GN TRADE's trademark.

        **2.   Defendant's Declarations**

Unfortunately for plaintiffs, defendant Brighton Bazaar has submitted a sworn declaration from its Vice President and Secretary, Rita Straschnow, asserting that "Brighton Bazaar has

---

[13] Quoting <u>Schwarzenegger</u>, 374 F.3d at 805.

[14] GN Trade's original "exclusive territory" was the entire U.S.

8

never sold any products bearing Plaintiffs' trademark and has never sold or shipped bread into the state of California." Straschnow Decl. ¶ 4 (Dkt. No. 20).  She also asserts that "Brighton Bazaar has never sold one loaf of bread under the name or from a box containing the name Bäcker Bäck." Straschnow Decl. ¶ 5.  Lest any doubt remain, defendant further asserts that "Brighton Bazaar has never sold or shipped one loaf of bread, under any name, into the state of California."  Strachnow Decl. ¶ 8.  In addition, Brighton's attorney has submitted a sworn declaration asserting that he asked his client to check the company's records, and that "Brighton's review of its records indicate that Brighton has not sold any bread" to the California businesses defendant identified as having received bread from Brighton.  Barrett Decl. at 10 (Dkt. No. 19).

### 3. **Plaintiffs' Response**

In response, plaintiffs assert, in a sworn declaration: "Based on information I received from our clients, I believe some of California clients, including Citrus Heights Plaza located in Cirtus Heights, CA, RDM Express Food located in San Francisco, CA, and Rodeo Food Distribution located in Los Angeles, CA, have also received Back Shop product from Brighton Bazaar and/or Siemens IT Corp."   There are two principal problems with this hedged declaration. First, it fails to commit to an assertion that Back Shop product came from Brighton Bazaar, saying only that it came from Brighton "and/or" Siemens.  In other words, it is entirely consistent with defendant's declarations – the Back Shop product

could, under this declaration, have all come from Siemens IT Corp., with none of it coming from Brighton Bazaar. Second, the declaration is basically an "information and belief" allegation, no more weighty than the Complaint itself, and thus not enough to overcome defendant's unequivocal, sworn denials.[15]

B. **Conduct Expressly Aimed at California**

Plaintiff argues, and supports with a declaration, that Brighton Bazaar took over its other exclusive markets – that is, markets other than California.[16] Plaintiffs' argument is that by taking away defendant's market in Colorado and other states, defendant injured them in California, since they are a California business. Even assuming that Brighton deliberately sold Backer Back product into Colorado and other states in knowing violation of plaintiffs' trademark, that is not conduct that is "aimed at" California. It is conduct that is aimed at the markets in Colorado and those other states. There is not even an allegation that Brighton knew that its alleged conduct was injuring a California-based company. See Rogers v. Ferrari, 2006 WL 335587 at *3, 2006

---

[15] Defendant Brighton Bazaar admits that it has shipped three "strudel" orders into California. But plaintiffs have never argued that the three strudel orders have anything to do with this lawsuit – which involves "bread" sold under the Bäcker Bäck trademark – or with their claim of personal jurisdiction. Accordingly, although the court is aware that there appears to be something called "strudel bread," the court will not further consider whether a shipment of three strudel shipments into California is enough to establish personal jurisdiction over Brighton Bazaar.

[16] At the hearing on this motion, plaintiffs appear to have abandoned any assertion that Brighton Bazaar took over, or attempted to take over its market in California.

10

U.S. Dist. LEXIS 17132 at *11 (E.D. Cal. February 9, 2006) (Karlton, J.) (unpublished) ("In this regard, it is significant that at oral argument plaintiff's counsel admitted that nothing in the record supported a conclusion that defendant Johnson-Norman knew that plaintiff was in California.  In the absence of such knowledge, personal jurisdiction does not exist.").

A brief review of the controlling cases helps to distinguish situations where "aiming" conduct occurred, and where it did not. The Supreme Court approved the exercise of personal jurisdiction in Calder v. Jones, 465 U.S. 783 (1984), where the "focal point" of defendants' allegedly libelous story was the forum state and its residents.[17]  Similarly, the Ninth Circuit found personal jurisidiction in Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124 (9th Cir. 2010), where the law firm defendant unfairly attempted to lure away plaintiff's California clients.[18]

---

[17] The story, in the National Enquirer, was distributed in California, to be read by a California audience.  The paper's largest circulation was in California.  The alleged wrongdoing was "intentionally directed at a California resident."  The story

> "concerned the California activities of a California resident, ... impugned the professionalism of an entertainer whose television career was centered in California, ... was drawn from California sources, ... and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."

In sum, California was "the focal point both of the story and of the harm suffered."  Calder, 465 U.S. at 788-789.

[18] In Brayton (a venue case, where venue is proper wherever "the defendant would be subject to personal jurisdiction"), defendant law firm allegedly competed unfairly for California clients, in the limited California market for elder abuse cases.

11

On the other hand, the Ninth Circuit found personal jurisdiction lacking in <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004), where the defendant's advertising allegedly injured Arnold Schwarzenegger, a California resident, but was directed only at the car dealer's local Ohio community.[19]  <u>See also</u>, <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006).[20]

The cases cited by plaintiffs do not hold otherwise.  In <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002), the court found that personal jurisdiction exists when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  In <u>Dole</u>, there is "something more" than mere injury to a plaintiff who is a resident of the forum state.  In that case,

---

Personal jurisdiction was found because there was something more than injury to a California plaintiff – defendants specifically targeted plaintiff's California practice, including of course, its California clients.

[19]   It may be true that Fred Martin's intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may have known that Schwarzenegger lived in California.  But this does not confer jurisdiction, for Fred Martin's express aim was local.  We therefore conclude that the Advertisement was not expressly aimed at California.
<u>Schwarzenegger</u>, 374 F.3d at 807.

[20] In <u>Pebble Beach Co. v. Caddy</u>, defendant, an Englishman, created a website with "Pebble Beach" in the domain name, www.pebblebeach.com. He did this after a trip to Carmel, CA, where Pebble Beach, the golf course and resort, is located.  Just maintaining this website was not enough to confer personal jurisdiction.

12

1  defendants "communicated directly with ... [plaintiff's] California
2  decisionmakers" in "Dole's California offices via telphone, fax and
3  mail," in fraudulently inducing those decisionmakers to lease
4  certain warehouse space.  Id., 303 F.3d at 1108 & 1109.

5  In Bancroft & Masters, Inc. v. Augusta National Inc.,223 F.3d
6  1082 (9th Cir. 2000), the golf tournament host Augusta National,
7  a Georgia company, sent a letter to the national internet registry
8  service in Virginia (Network Solutions, Inc.), challenging
9  plaintiff's use of the Internet domain name masters.com.  This
10 triggered plaintiff's obligation to file a declaratory action
11 lawsuit to protect its right to use the website.  Plaintiff filed
12 suit in California, where it was located.  The Ninth Circuit found
13 that the California district court had personal jurisdiction over
14 Augusta National because it did "something more" than allegedly
15 injure a California resident.  Namely, it engaged in
16 "individualized targeting" of "a known forum resident." Bancroft,
17 223 F.3d at 1088.

18 Plaintiffs here have made no showing of the "something more"
19 that is required to exercise personal jurisdiction over Brighton
20 Bazaar.  They have not alleged that defendant contacted them in
21 California, that it intended to damage a company it knew was based
22 in California, that it attempted to take away the California market
23 from plaintiffs, or even that defendant was aware that plaintiffs
24 were California-based or had anything to do with California or the
25 California market.  The allegation that defendant competed unfairly
26 in non-California markets where plaintiffs had exclusive

distributorship rights, simply is not enough to satisfy the requirement that defendant's conduct must be "aimed at" California.

**V. CONCLUSION**

For the reasons set forth above, the Motion To Dismiss the complaint for lack of personal jurisdiction is **GRANTED**. This action is **DISMISSED with prejudice** as to defendant Brighton Bazaar.

IT IS SO ORDERED.

DATED: September 29, 2011.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT